[Civ. No. 41799. Second Dist., Div. Two. Jan. 30, 1974.]

CENTINELA VALLEY SECONDARY TEACHERS ASSOCIATION et al., Plaintiffs and Appellants, v.
CENTINELA VALLEY UNION HIGH SCHOOL DISTRICT et al., Defendants and Respondents.

36

## COUNSEL

Trygstad & Odell and Lawrence B. Trygstad for Plaintiffs and Appellants.

John H. Larson, County Counsel, and John J. Wagner, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**COMPTON, J.**—Mary Ianni (petitioner)[1] who is certified to teach at the secondary school level petitioned the Superior Court of Los Angeles County for a writ of mandate to compel the Centinela Valley Union High School District (the District) to classify her as a probationary teacher, and thus to require the District to grant her certain rights under Education Code section 13447, and a hearing pursuant to Education Code section 13443 to determine the District's right or lack thereof to refuse to rehire her for the 1972-1973 school year. The petition was denied and petitioner appeals.

Petitioner's claim to the status of a probationary teacher and the rights attendant on such status flows from her contention that during the 1971-1972 school year she fulfilled the requirements of Education Code section

---

[1] An additional nominal plaintiff was the Centinela Valley Secondary Teacher's Association which purports to represent a portion of the certificated employees of the Centinela Valley Union High School District.

13336.5 which provides in pertinent part: "Any employee classified as a substitute employee, who teaches during one school year for at least 75 percent of the number of days the regular schools of the district were maintained in such school year any class or classes which would have been taught by one person absent from service, shall be deemed to have been a probationary employee during the entire school year in which he so teaches, with the rights and duties of other probationary employees of the district, and shall be deemed to have served a complete school year as a probationary employee."

The resolution of this dispute turns on the interpretation of and the discerning of the legislative intent underlying the phrase "classes which would have been taught by one person absent from service." The District admits that petitioner met all requirements for invoking the statute with the single exception that she have taught classes which would have been taught by "one person absent from service." The petitioner admitted in her petition and the trial court found that petitioner substituted one semester each for two different regular teachers during the 1971-1972 school year.

This proceeding is governed by Code of Civil Procedure sections 1085, 1086 and 1110. Hence our view is to determine if the judgment of the trial court is supported by the evidence and was a proper exercise of discretion. The trial court found that petitioner failed to satisfy the requirements of the statute. That finding is well supported. ■ The obvious purpose of the statute is to prevent school boards and administrators from abusing their discretion in hiring substitute teachers so as to circumvent the tenure rights of teachers. Since this is a proceeding by way of prerogative writ, that abuse must clearly be demonstrated and the motives of the District may be considered.

■ "It has been repeatedly recognized that unless statutory mandate compels otherwise, the position of the teacher is created and fixed by the terms of the contract of employment." (*Matthews* v. *Board of Education,* 198 Cal.App.2d 748, at p. 752 [18 Cal.Rptr. 101].)

In order to abrogate the contract the statutory mandate must be clear.

### FACTS

For convenience we consider the first semester of the 1971-1972 school year to run from September 1971 to February 1972 and the second semester from February 1972 to June 1972.

In March of 1971, Wendy Brooks, a permanent member of the faculty at Hawthorne High School requested and was granted maternity leave for the first semester of the coming school year and in June of that year petitioner signed a contract to teach on a substitute basis for Wendy Brooks for that one semester.

In July of 1971 another permanent teacher at Hawthorne High School, Mrs. Edith Harris, requested and was granted an opportunity leave for the entire 1971-1972 school year. By contract dated December 15, 1972, petitioner was engaged to substitute for Mrs. Harris during the second semester of the school year beginning in February 1972.

Pursuant to these contracts petitioner taught as a substitute for Mrs. Brooks for the first semester and for Mrs. Harris for the second semester of the 1971-1972 school year. During the 1971-1972 school year petitioner occupied the same classroom. She taught five courses in English, three of which were year-long courses.

By the beginning of the next school year both Mrs. Brooks and Mrs. Harris were available for duty and petitioner was advised that her services would not be needed during the 1972-1973 school year.

## DISCUSSION

It is the contention of petitioner that since she taught the same classes for the full year, classes which were what one regular teacher would normally have taught, she satisfied the statute and should not be required to identify that one teacher. Thus, she contends that the actual teaching assignment is the controlling factor and not how the District administratively accounted for the permanent and substitute teachers.

It appears from the evidence that Mrs. Harris, who had initially been granted a year's leave of absence, returned early and was actually assigned to teaching duties during the second semester. However, her status was that of substitute for yet another teacher who had been granted sick leave. Petitioner points to this fact as supporting her position, contending that she could not be classified as a substitute for a teacher who was not absent.

In our view, however, the evidence as to the method employed in making teaching assignments, including the particular handling of Mrs. Harris' assignment, points to the correctness of the trial court's decision and interpretation of the statute in question.

At the beginning of the year it is clear that both the District and petitioner anticipated that petitioner would substitute for Wendy Brooks for

one semester and it is reasonable to infer that petitioner was assigned the classes which Mrs. Brooks would have taught. It was also to be anticipated that at the end of that semester Mrs. Brooks would return and take over the second semester of the year-long courses. -

When petitioner executed the second contract to substitute for Mrs. Harris it is reasonable to infer that petitioner would have been assigned to those classes which Mrs. Harris would normally have taught. Further petitioner could not at this point have anticipated being employed beyond the end of the school year.

If at the end of the first semester the District had assigned petitioner to different classes and assigned Mrs. Brooks to the classes petitioner had been teaching, this controversy would not have arisen, since petitioner must concede that she would then have taught the classes of two different teachers whoever they might be.

The latter procedure was not followed here. Instead petitioner was assigned to continue through the year with the same classes and both Mrs. Brooks and Mrs. Harris were, on their return, given other class assignments.

Education Code section 939 provides in pertinent part: "Powers and Duties of Superintendent. The superintendent of each school district shall, in addition to any other powers and duties granted to or imposed upon him: (a) Be the chief executive officer of the governing board of the district. . . . (c) Subject to the approval of the governing board, assign all employees of the district employed in positions requiring certification qualifications, to the positions in which they are to serve."

■ This statute provides for the well recognized prerogative of the school administrator to control class assignments. That prerogative is to be exercised for the best interests of the students.

The administrative decision to have petitioner continue with the same classes rather than shift her to another assignment after one semester and then introduce a different teacher to complete the second half of year-long courses was calculated to benefit the students in those courses. The district should not be penalized for that decision.

■ "The assignment of teachers to classes for which a teacher is certificated is entirely within the discretion of the governing board. A teacher does not acquire tenure in a particular class or room." (*Matthews* v. *Board of Education,* 198 Cal.App.2d 748, 754 [18 Cal.Rptr. 101].)

Petitioner was a substitute teacher. ■ "The substitute teacher is employed from day to day to serve at the option of the school district in the absence of the regular teacher." (*Wood* v. *Los Angeles City School Dist.*, 6 Cal.App.2d 400, 402 [44 P.2d 644].)

Education Code section 13336 as it read at the time in question provided: "Governing boards of school districts shall classify as substitute employees those persons employed in positions requiring certification qualifications, to fill positions of regularly employed persons absent from service."

Finally as was stated in *Ham* v. *Los Angeles City High Sch. Dist.*, 74 Cal.App.2d 773, at page 775 [169 P.2d 646]: ■ "There is a wide distinction between the status of probationary and permanent employees on the one hand and substitute employees on the other; the former, as the classification indicates, have positions of their own from which they cannot be removed except for cause and after a hearing; the latter have no positions of their own but occupy, temporarily, positions belonging to probationary or permanent teachers. Furthermore, teaching as a substitute does not qualify one to become a permanent teacher."

The District could have avoided any problem such as created by the present litigation by simply filling the vacancies on a day-to-day basis with various substitute teachers. The use of the one semester contracts were of benefit to the petitioner and again were of benefit to the students.

Substitute teachers play a definite and beneficial role in school administration, but they exist as an aid to the school administration in preserving necessary flexibility in teacher assignments and make it possible for tenured teachers to avail themselves of sick and other beneficial types of leaves of absence, since, by law, permanent teachers who are absent from service for any of the varying legally permissible reasons, have the right to return to their positions. When this occurs, the inability of the school administration to terminate teachers who substituted during the absence could result in overstaffing. The result would be, especially in smaller school districts, that the administration would in order to avoid overstaffing resort to the use of day-to-day or short-term substitutes to the detriment of the educational process.

Since petitioner seeks by use of an extraordinary writ to avail herself of the provisions of a statute which changes a substitute teacher into a probationary teacher by operation of law, she had the burden of proving her case.

We reject petitioner's claim that because of what she contends is a legis-

lative trend toward expanded rights for teachers, that it is unfair to place the burden on her to identify the teacher for which she was substituting. In fact in this particular area the legislative trend is just the reverse as witness the enactment in 1971 of Education Code section 13337.3 which provides for the hiring of long-term temporary employees for up to a year without granting probationary status.[2] The statute upon which petitioner relies serves under certain limited circumstances to obliterate the long established distinction between permanent and substitute teachers and in so doing seriously impairs the traditional discretion exercised by school administrators.

We are enjoined by Education Code section 2 to liberally construe this statute with a view to effect its objects and to promote justice. On the other hand, it has been held that in construing legislation dealing with the educational systems, courts must not lose sight of the welfare of the children which is the fundamental purpose of such legislation (*Knickerbocker* v. *Redlands H. Sch. Dist.*, 49 Cal.App.2d 722 [122 P.2d 289]). A liberal construction gives a fair and reasonable meaning to a statute to effect its objectives but does not permit a disregard of the plain provision of the act.

We have discovered no legislative hearing records which provide any clue to the legislative interpretation of Education Code section 13336.5 nor has our research disclosed any previous instances of appellate interpretation. Thus our interpretation of this statute must be made against the background of the general legislative scheme which governs public school administration and the evidence in this case which provides an insight into the practical day-to-day problems of that administration.

■ Legislative enactments are to be construed in accordance with the

---

[2]Education Code section 13337.3 states: "Notwithstanding the provisions of Sections 13336, 13336.5, and 13337, the governing board of a school district may employ as a teacher, for a complete school year but not less than one semester during a school year, any person holding appropriate certification documents, and may classify such person as a temporary employee. The employment of such persons shall be based upon the need for additional certificated employees during a particular semester or year because a certificated employee has been granted leave for a semester or year, or is experiencing long-term illness, and shall be limited, in number of persons so employed, to that need, as determined by the governing board.

"Any person employed for one complete school year as a temporary employee shall, if reemployed for the following school year in a position requiring certification qualifications, be classified by the governing board as a probationary employee and the previous year's employment as a temporary employee shall be deemed one year's employment as a probationary employee for purposes of acquiring permanent status."

It appears to us that this section might well have been enacted as a result of problems created by section 13336.5 of the Education Code.

ordinary meaning of the language used, if the words are not ambiguous and do not lead to an absurdity. (*Pac. Gas & E. Co.* v. *Shasta Dam etc. Dist.,* 135 Cal.App.2d 463 [287 P.2d 841]; 45 Cal.Jur.2d, Statutes, § 140, p. 647; *Fresno City H. S. Dist.* v. *De Caristo,* 33 Cal.App.2d 666 [92 P.2d 668].)

Of course the words "one person absent from service" are not ambiguous and have a clear, ordinary meaning. A substitute by definition is one who fills a position of a regular employee absent from service.

The words "class or classes which would have been taught" are on the surface unambiguous and also have a clear and ordinary meaning. However, as we see from what happened in this case, their application is not easy. For instance, class assignments depend upon many variables such as enrollment and the qualifications of the teachers who report for duty, thus it is difficult for the school administration to state in advance of the beginning of the school year what specific classes would be assigned to a specific teacher. For the same reasons it is difficult to assure that any one teacher who commences a school year will continue to teach the same classes throughout the year. Unexpected vacancies in administrative positions can result in a teacher being removed from a classroom to perform administrative duties.

Thus assume for instance that a teacher admittedly substituted for one teacher for one full year. This uncertainty in class assignments would permit the school administration to contend that the classes which the substitute taught were not those which "would have been taught" by the absent teacher. We agree with petitioner that such procedure would be unfair to the substitute since he or she would be unable to disprove such a contention.

This points to the vice of permitting the literal language to control by relying on teaching assignments as the critical requirement. By the same token it appears to be out of harmony with the legislative purpose, to require the District to involuntarily grant probationary status to a substitute who admittedly filled the positions of two different regular teachers, simply because the substitute was, for the good of the students, assigned classes that would normally be taught by one person.

In the first example we posed, the substitute would be replacing "one person absent from service" but might not be teaching "the class or classes" that one person "would have taught." In the case at bar petitioner taught classes that one person (Mrs. Brooks) would normally have taught but that one person was not "absent from service" for the entire year.

In this context we are of the opinion that the statute in question and in particular the phrase "who teaches . . . any class or classes which would have been taught by one person absent from service . . ." was intended to apply to the situation where a substitute teacher replaces one and the same permanent teacher for an entire school year regardless of particular class assignments. ■ Stated another way, the statute only applies when a substitute fills a vacancy in teacher complement of one-year duration, created by the absence of one permanent teacher and does not apply to a one-year vacancy which results from the aggregate of several teachers being absent for shorter periods.

This interpretation preserves administrative discretion while affording fair treatment of substitutes and thus achieves what we presume to be the overall objective of the statute.

In the case at bar it was the physical absence of two different teachers that made possible petitioner's employment for a full year. The fact that petitioner was assigned the same classes for the entire year did not alter that fact.

The judgment is affirmed.

Roth, P. J., concurred.

**FLEMING, J.**—I dissent. In my view petitioner qualified as a probationary employee under Education Code section 13336.5 by teaching during one school year classes which would have been taught by one person absent from service.

It is conceded that (1) petitioner was classified as a substitute employee; (2) she was employed by the school district as a teacher; (3) she taught the same classes (4) with the same pupils (5) in the same schoolroom (6) for one school year. To me it seems plain that the English classes petitioner taught were classes which would have been taught by one person, and that by teaching them for one school year petitioner qualified under the statute as a probationary employee.

The weakness of the body-slot principle, purportedly used by the school district, becomes self-evident on examining the facts of the present case, where, according to the school district's calculations, petitioner was a substitute during the second term for Mrs. Harris, a foreign language teacher who was physically present and teaching during that term. Thus, although petitioner appeared in the starting lineup and played the same position

throughout the entire game, the school district maintains that she remained a substitute, one who replaced Mrs. Brooks during the first half and replaced Mrs. Harris during the second half, still a substitute even when Mrs. Harris rejoined the team to play the second half. If we accept this logic, a school district through sagacious shuffling of personnel could field a team comprised entirely of substitutes. I do not believe the Legislature intended the statute to be so circumvented.

I would reverse the judgment.

Appellants' petition for a hearing by the Supreme Court was denied March 27, 1974.