[Civ. No. 38308. First Dist., Div. One. Jan. 25, 1977.]

CAROLIE COFFEY et al., Plaintiffs and Appellants, v.
GOVERNING BOARD OF SAN FRANCISCO COMMUNITY
COLLEGE DISTRICT et al., Defendants and Respondents.

## COUNSEL

Van Bourg, Allen, Weinberg & Roger, Van Bourg, Allen, Weinberg, Williams & Roger and Stewart Weinberg for Plaintiffs and Appellants.

Thomas M. O'Connor, City Attorney, and B. Timothy Murphy, Deputy City Attorney, for Defendants and Respondents.

## OPINION

**SIMS, J.**—Appellants, a teacher and the employee organization of which she is a member (see former Ed. Code, § 13084.5, repealed Stats. 1975, ch. 961, § 1), have appealed from a judgment which denied their petition seeking a peremptory writ of mandate directing that the teacher be returned to respondent district as a regular, permanent employee of the district with back pay for the 1974-1975 school year. Their contention concerning the teacher's tenure rests on the provisions of section 13346.30 of the Education Code reading ". . . Failure to give the notice as required to a contract employee under his first contract shall be deemed an extension of the existing contract without change for the following academic year. . . . Failure to give the notice as required to a contract employee under his second consecutive contract shall be deemed a decision to employ him as a regular employee for all subsequent academic years."[1] Since the statute refers to "a contract employee"

---

[1]The following provisions, adopted in 1971 (Stats. 1971, ch. 1654, § 1), and operative September 1, 1972, govern the tenure of community college contract employees since that date.

§ 13346.30. "The governing board shall give written notice of its decision under Section 13346.20 and the reasons therefor to the employee on or before March 15 of the academic year covered by the existing contract. Failure to give the notice as required to a contract employee under his first contract shall be deemed an extension of the existing contract without change for the following academic year. The governing board shall give written notice of its decision under Section 13346.25 and the reasons therefor to the employee on or before March 15 of the academic year covered by the existing contract. Failure to give the notice as required to a contract employee under his second consecutive contract shall be deemed a decision to employ him as a regular employee for all subsequent academic years."

§ 13346.20. "If a contract employee is working under his first contract, the governing board, at its discretion and not subject to judicial review except as expressly provided herein, shall elect one of the following alternatives: [¶] (a) Not enter into a contract for a second academic year. [¶] (b) Enter into a contract for a second academic year. [¶] (c) Employ the contract employee as a regular employee for all subsequent academic years."

§ 13346.25. "If a contract employee is employed under his second consecutive contract entered into pursuant to Section 13346.20, the governing board, at its discretion

determination of the teacher's tenure in this case depends on whether she enjoyed that status,[2] or whether she was a temporary employee or a substitute employee.[3]

and not subject to judicial review except as expressly provided herein, shall elect one of the following alternatives: [¶] (a) Employ the contract employee as a regular employee for all subsequent academic years. [¶] (b) Not employ the contract employee as a regular employee."

[2] Section 13345.05 provides in pertinent part:

"For the purposes of this article: [¶] (a) 'Contract employee' means an employee of a district who is employed on the basis of a contract in accordance with the provisions of Section 13346.05 or subdivision (b) of Section 13346.20. . . . [¶] (d) 'Regular employee' means an employee of a district who is employed in accordance with the provisions of subdivision (c) of Section 13346.20 or Section 13346.25."

§ 13345.10 reads: "For the purposes of other provisions of law: [¶] (a) A contract employee is a probationary employee. [¶] (b) A regular employee is a permanent employee."

[3] Section 13346 provides: "The governing board of a district shall employ each certificated person as one of the following: contract employee, regular employee, or temporary employee."

From September 1, 1972 to September 1, 1974, section 13346.40 provided, in part: "(a) The governing board of a school district may employ temporary employees pursuant to Section 13329 and 13337.5. Substitute employees may be employed pursuant to Section 13336. [¶] (b) For the purposes of the sections specified in subdivision (a), a 'probationary employee' is a 'contract employee,' and a 'permanent employee' is a regular employee. . . ."

Section 13329 as it existed September 1, 1972 (Stats. 1970, ch. 697, § 1), and as it was revised in 1973 (Stats. 1973, ch. 399, § 1), and 1976 (Stats. 1976, ch. 639, § 1) refers to types of employment which are not involved in this case.

Section 13337.5 provided and provides: "Notwithstanding the provisions of Section 13337, the governing board of a school district may employ as a teacher in grade 13 or grade 14, for a complete school year but not less than a complete semester or quarter during a school year, any person holding appropriate certification documents, and may classify such person as a temporary employee. The employment of such persons shall be based upon the need for additional certificated employees for grades 13 and 14 during a particular semester or quarter because of the higher enrollment of students in those grades during that semester or quarter as compared to the other semester or quarter in the academic year, or because a certificated employee has been granted leave for a semester, quarter, or year, or is experiencing long-term illness, and shall be limited, in number of persons so employed, to that need, as determined by the governing board. [¶] Such employment may be pursuant to contract fixing a salary for the entire semester or quarter. [¶] No person shall be so employed by any one district for more than two semesters or quarters within any period of three consecutive years. [¶] Notwithstanding any other provision to the contrary, any person who is employed to teach adult or community college classes for not more than 60 percent of the hours per week considered a full-time assignment for permanent employees having comparable duties shall be classified as a temporary employee, and shall not become a probationary employee under the provisions of Section 13446."

Section 13446 provided and provides: "Governing boards of school districts may dismiss temporary employees requiring certification qualifications at the pleasure of the board. A temporary employee who is not dismissed during the first three school months, or in the case of migratory schools during the first four school months of the school term for which he was employed and who has not been classified as a permanent employee shall be deemed to have been classified as a probationary employee from the time his

We find that the facts in the record sustain the trial court's implied finding that the teacher was a substitute teacher in the fall semester of the 1972-1973 school year, and that she obtained no tenure, contract (probationary) or regular (permanent), during that year. We do conclude that by virtue of the third paragraph of section 13337.5 she obtained status as a first year contract (probationary) part-time teacher in the school year 1973-1974, and that, by virtue of the failure to give her notice that the district would not enter into a contract for the ensuing academic year, it was deemed that she would be employed on the same basis as 1973-1974 in the 1974-1975 year. It further appears that she rejected such employment for her own convenience. The trial court properly denied her relief on her petition for mandamus in which she sought classification as a regular (permanent) employee with a greater part-time status. The judgment must be affirmed.

It is agreed that the teacher, the holder of a certificate to teach sociology in community colleges in California, was employed by the governing board of the district beginning in the school year 1971-1972. In the first semester of that school year she taught six units; in the second semester she taught three units. Fifteen units per semester or thirty units per year is considered a full teaching load within the district. During that period she was a substitute teacher for persons who were absent from service. (See § 13336, fn. 3 above.) She makes no claim that any rights accrued to her by virtue of that employment.

On August 11, 1972, she was offered a contract appointing her as "TEMPORARY LONG TERM SUBSTITUTE instructor for the FALL SEMESTER, 1972 ONLY for regular instructor Willie Thompson." She accepted that contract and was employed under it to teach 15 units during the 1972-1973 fall semester. It is now contended on the basis of facts discussed below, that such employment was not truly employment as a substitute employee, but should be deemed employment as a "contract"

---

services as a temporary employee commenced."

Section 13336 provided, and provides, in pertinent part: "Except as provided in Sections 13337.3 and 13337.5, governing boards of school districts shall classify as substitute employees those persons employed in positions requiring certification qualifications, to fill positions of regularly employed persons absent from service. . . . [¶] Any person employed for one complete school year as a temporary employee shall, if reemployed for the following school year in a position requiring certification qualifications, be classified by the governing board as a probationary employee and the previous year's employment as a temporary employee shall be deemed one year's employment as a probationary employee for purposes of acquiring permanent status."

Section 13445 provided and provides: "Governing boards of school districts may dismiss substitute employees at any time at the pleasure of the board."

or "probationary" employee. (See §§ 13345.05, subd. (a) and 13345.10, subd. (a), fn. 2 above; and § 13334.[4])

In the spring semester of the 1972-1973 school year the teacher was assigned and taught a total of nine units as a nominal "temporary" employee. It is contended that she taught 80 percent of the hours per week considered a full time assignment for permanent employees having similar duties during the 1972-1973 school year (24 out of 30 units); and that by reason thereof she was a contract employee under her first contract and was entitled to a decision under section 13346.20 and notice under section 13346.30.

In the ensuing school year, 1973-1974, the teacher again was employed as a nominal "temporary" employee to teach 9 units in the fall semester and 9 units in the spring semester for a total of 18 units, or 60 percent of a full 30-unit teaching load. It is contended that she was then entitled to a decision under section 13346.25 and notice under section 13346.30. No such notice was given.

The teacher was apparently offered employment at the 60 percent rate for the fall semester of the 1974-1975 school year but elected to obtain full term employment elsewhere. On March 11, 1975, she filed the instant proceedings. The district answered admitting the employment recited above, but not the conclusions expressed in the petition concerning its effect. The district also affirmatively pleaded that the teacher had failed to exhaust her available administrative remedies, and that she was barred from any relief by laches and estoppel.

[4]Section 13334 provides: "Governing boards of school districts shall classify as probationary employees, those persons employed in positions requiring certification qualifications for the school year, who have not been classified as permanent employees or as substitute employees."

Note also section 13337 which reads in part: "Governing boards of school districts shall classify as temporary employees those persons requiring certification qualifications, other than substitute employees, who are employed to serve from day to day during the first three school months of any school term to teach temporary classes not to exist after the first three school months of any school term or to perform any other duties which do not last longer than the first three school months of any school term, or to teach in special day and evening classes for adults or in schools of migratory population for not more than four school months of any school term. If the classes or duties continue beyond the first three school months of any school term or four school months for special day and evening classes for adults, or schools for migratory population, the certificated employee, unless a permanent employee, shall be classified as a probationary employee. The school year may be divided into not more than two school terms for the purposes of this section. . . ."

In the trial court the appellants contended that by operation of law the teacher became a tenured or regular employee of the community college district at a 70 percent of full time rate because of her services for 24 units in the 1972-1973 school year, and 18 units in the 1973-1974 school year. The principal issue was whether the position she filled in the fall semester of 1972-1973 was a position of a regularly employed person absent from service. This contention was resolved adversely to the teacher. (See part I below.) On appeal it is further contended that she is entitled to relief under the provisions of the third paragraph of section 13337.5 (fn. 3 above) which prohibit employment, of a person holding appropriate certification documents, as a temporary employee by any one district for more than two semesters within any period of three consecutive years.

The district asserts that the implied finding of the trial court, expressed in its decision, that the teacher was a temporary substitute teacher in the 1972-1973 fall semester must be sustained on the record; that insofar as the teacher claims a right to employment at a 60 percent rate, she was offered and refused such employment; that she is not entitled to any reemployment rights because she voluntarily quit her position; and that she is barred from any relief for failure to pursue her administrative remedies.

I

In August at the time of the execution of the contract for the fall semester of the 1972-1973 school year, the new article of the Education Code particularly governing the employment of community college personnel (Stats. 1971, ch. 1654, § 1, operative Sept. 1, 1972, adding art. 3.5, [§§ 13345-13348.05] to ch. 2 of div. 10), was not yet operative. In any event the employment of substitute or temporary employees was and thereafter continued to be (see § 13346.40, fn. 3 above) governed by the provisions of sections 13336 and 13337.5. The code directed the governing board to make the classification at the time of employment. (§ 13335. See *Rutley* v. *Belmont Elementary Sch. Dist.* (1973) 31 Cal.App.3d 702, 707 [107 Cal.Rptr. 671].) The phrase "temporary long term substitute" may be analyzed to determine whether it categorizes the teacher as a substitute or a temporary teacher insofar as either has different attributes. Under the provisions of section 13336 (fn. 3 above) persons employed "to fill positions of regularly employed persons absent from service" are to be classified as substitute employees. Since March 4, 1972, that section has excepted employment made under section 13337.5

(*id.*), which directs that persons may be employed for not less than one semester and classified as a temporary employee when there is a need for an additional certified employee during a particular semester or year "because a certified employee has been granted leave for a semester, quarter or year. . . ."

It is appellants' contention that it is improper to classify as a substitute employee an individual who is teaching the classes of a regular certificated employee who is still a paid employee of the district. Insofar as permitted by the statutes, the formal contracts, the resolutions appointing the teacher and the rules and regulations of the board fix the status of the employee prior to the time the teacher attains status as a regular or permanent employee. (*Holbrook* v. *Board of Education* (1951) 37 Cal.2d 316, 331-332 [231 P.2d 853]; *Richardson* v. *Board of Education* (1936) 6 Cal.2d 583, 586 [58 P.2d 1285]; *Paulus* v. *Board of Trustees* (1976) 64 Cal.App.3d 59, 61-62 [134 Cal.Rptr. 220]; *Centinela Valley Secondary Teachers Assn.* v. *Centinela Valley Union High Sch. Dist.* (1974) 37 Cal.App.3d 35, 38 [112 Cal.Rptr. 27]; *Rutley* v. *Belmont Elementary Sch. Dist.* (1973) 31 Cal.App.3d 702, 705-706 [107 Cal.Rptr. 671]; *Matthews* v. *Board of Education* (1962) 198 Cal.App.2d 748, 752-753 [18 Cal.Rptr. 101]; and *Wood* v. *Los Angeles City School Dist.* (1935) 6 Cal.App.2d 400, 402 [44 P.2d 644].) On the other hand, it is recognized that the governing board cannot circumvent the proper statutory classification of a teacher by administrative practices or subterfuge. (See § 13338.1; *Balen* v. *Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 830-831 [114 Cal.Rptr. 589, 523 P.2d 629]; *Holbrook* v. *Board of Education, supra,* 37 Cal.2d 316, 333; *Campbell* v. *Graham-Armstrong* (1973) 9 Cal.3d 482, 486-487 [107 Cal.Rptr. 777, 509 P.2d 689]; *Vittal* v. *Long Beach Unified Sch. Dist.* (1970) 8 Cal.App.3d 112, 118-119 [87 Cal.Rptr. 319]; *Beseman* v. *Remy* (1958) 160 Cal.App.2d 437, 440-441 [325 P.2d 578]; and *Mitchell* v. *Board of Trustees* (1935) 5 Cal.App.2d 64, 68 [42 P.2d 397].)

The record reflects that the regular certificated employee for whom the teacher was to act as a temporary long term substitute was granted a leave from his instructional duties for the fall 1972 semester to complete an internship program in administration as part of the curricular requirements of the School of Education at the University of California at Berkeley for a doctorial degree in school administration. The district, pursuant to arrangement with the employee and the university, allowed the employee to perform the required internship work within the district. He was assigned to the office of the respondent

district, his regular employer, as a part of the university's required internship program. While assigned to the district office he received assignments for experience and training to various administrative branches, such as the business office, the office of certificated services and the adult/occupational division. He was continued on his regular salary and was paid out of district funds, which was the normal procedure for interns working on an intern program.

It is contended that if the district is permitted to transfer its employees from one assignment to another, and hire a "substitute" to perform the former duties, it will never hire contract (probationary) or regular (permanent) certificated employees when such a transfer of assignments is made. It is also contended that under the provisions of section 13467, which deals with the question of the amount and manner of payment of compensation to a certificated employee who is absent, it is contemplated that the district should not be in the position of paying full compensation both to the person on a leave of absence and to the substitute employee.

On the other hand, it is acknowledged that if the certificated employee on leave of absence had served his internship in another community college district, the teacher performing his instructional duties would be a true substitute. By the same token, the fact that the respondent district paid an intern from another district for administrative duties would in no way affect the status of substitute teacher.

"Since petitioner seeks by use of an extraordinary writ to avail herself of the provisions of a statute which changes a substitute teacher into a probationary teacher by operation of law, she had the burden of proving her case." (*Centinela Valley Secondary Teachers Assn.* v. *Centinela Valley Union High Sch. Dist., supra,* 37 Cal.App.3d 35, 41. See also *Paulus* v. *Board of Trustees, supra,* 64 Cal.App.3d 59, 63.)

In a similar dispute, involving the status of a teacher who was employed for two consecutive full semesters as a substitute teacher, the court stated, "This proceeding is governed by Code of Civil Procedure sections 1085, 1086 and 1110. Hence our view is to determine if the judgment of the trial court is supported by the evidence and was a proper exercise of discretion. The trial court found that petitioner failed to satisfy the requirements of the statute. That finding is well supported. The obvious purpose of the statute is to prevent school boards and administrators from abusing their discretion in hiring substitute teachers

so as to circumvent the tenure rights of teachers. Since this is a proceeding by way of prerogative writ, that abuse must clearly be demonstrated and the motives of the District may be considered." (*Centinela Valley Secondary Teachers Assn.* v. *Centinela Valley Union High Sch. Dist., supra,* 37 Cal.App.3d 35, 38. See also *Paulus* v. *Board of Trustees, supra,* 64 Cal.App.3d 59, 62. Note, *Rutley* v. *Belmont Elementary Sch. Dist., supra,* 31 Cal.App.3d 702, 707-708; and cf. *Holbrook* v. *Board of Education, supra,* 37 Cal.2d 316, 332-333.)

Here no findings were requested or made by the trial court. ▆ "And, in the absence of findings of fact and conclusions of law, every intendment is in favor of the judgment or order appealed from and it is presumed that every fact or inference essential to the support of the order and warranted by the evidence was found by the court. [Citations.]" (*Estate of Rule* (1944) 25 Cal.2d 1, 10 [152 P.2d 1003, 155 A.L.R. 1319] [disapproved on another issue in *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 866, fn. 2 (44 Cal.Rptr. 767, 402 P.2d 839)]. See also *Cohn* v. *Bugas* (1974) 42 Cal.App.3d 381, 393 [116 Cal.Rptr. 810].) The court did indicate in its written decision, "Willie Thompson was not 'reassigned to other tasks' within the District but was on a leave for the sole purpose of continuing his studies. He was, during this period, a student of the University of California and subject to the University's control."[5] ▆ "The memorandum opinion of a trial judge may be used to determine the basis for his decision. [Citations.]" (*City of San Diego* v. *American Federation of State etc. Employees* (1970) 8 Cal.App.3d 308, 317 [87 Cal.Rptr. 258].)

▆ The evidence sustains the findings and conclusions of the lower court. In the absence of an intent to evade the provision of the statute the action of the respondent district in hiring the teacher as a substitute was properly approved. (See *Paulus* v. *Board of Trustees, supra,* 64 Cal.App.3d 59, 64; *Centinela Valley Secondary Teachers Assn.* v.

[5]The court added: "Adoption of petitioners' position would work effectively to eliminate the mutually beneficial situation of enabling college districts to have personnel on sabbattical [*sic*] leaves and performing their sabbattical [*sic*] tasks within their own district. [¶] There is no dispute that the contract entered into by the respective parties called for Ms. Coffey to serve as a substitute teacher only. Petitioners contend that, regardless of contractual intent, Ms. Coffey by virtue of Willie Thompson's 'reassignment' and the work she actually performed, is entitled to a statutory override of the contractual wording and obvious intent. However, the case law cited by petitioners as supportive of their position directs itself to situations where Boards controlling school districts were using their positions of dominance to prevent employees from achieving legitimately earned permanent or promotional status. No evidence of such a condition is presented in this case."

*Centinela Valley Union High Sch. Dist., supra,* 37 Cal.App.3d 35, 38; *Rutley* v. *Belmont Elementary Sch. Dist., supra,* 31 Cal.App.3d 702, 707-708; *Matthews* v. *Board of Education, supra,* 198 Cal.App.2d 748, 750-753; *Ham* v. *Los Angeles City High Sch. Dist.* (1946) 74 Cal.App.2d 773, 777 [169 P.2d 646]; *Hogsett* v. *Beverly Hills School Dist.* (1936) 11 Cal.App.2d 328, 334 [53 P.2d 1009]; and *Wood* v. *Los Angeles City School Dist., supra,* 6 Cal.App.2d 400, 404.)

It is true that in *Balen* v. *Peralta Junior College Dist., supra,* the court stated: "Because the substitute and temporary classifications are not guaranteed procedural due process by statute, they are narrowly defined by the Legislature, and should be strictly interpreted." (11 Cal.3d at p. 826.) Nevertheless the court observed, "We recognize that the school administration must be afforded wide discretion and latitude in controlling the routine operations and daily affairs of the school in order to meet the innumerable local problems which may occur. Administrative decisions which invariably affect personnel must be made as the needs of the school change." (*Id.,* p. 832.) As applied to this case and the reasoning of the court below (see fn. 5 above), the following observations are pertinent: "Substitute teachers play a definite and beneficial role in school administration, but they exist as an aid to the school administration in preserving necessary flexibility in teacher assignments and make it possible for tenured teachers to avail themselves of sick and other beneficial types of leaves of absence, since, by law, permanent teachers who are absent from service for any of the varying legally permissible reasons, have the right to return to their positions. When this occurs, the inability of the school administration to terminate teachers who substituted during the absence could result in overstaffing. The result would be, especially in smaller school districts, that the administration would in order to avoid overstaffing resort to the use of day-to-day or short-term substitutes to the detriment of the educational process." (*Centinela Valley Secondary Teachers Assn.* v. *Centinela Valley Union High Sch. Dist., supra,* 37 Cal.App.3d at p. 41.)

Since in the school year 1972-1973 the teacher was only employed as a substitute or temporary certificated employee, she did not become a contract (probationary) employee, or a regular (permanent) employee, and in March 1973 she was not entitled to any notice of a decision not to employ her for the following year under the provisions of section 13346.30. The effect on her tenure of her subsequent reemployment as a temporary part-time teacher in the following year is discussed below.

## II

In the school year following that reviewed above, the teacher was employed for nine units in each semester, or for 60 percent of a full teaching load. Irrespective of whether the period as a substitute in the fall 1972-1973 school year be considered, it is apparent that she was employed for more than two semesters within a period of three years as a temporary part-time certificated employee. The third paragraph of section 13337.5 has been construed to prohibit such employment (see fn. 3 above). The fourth paragraph, however, states, "Notwithstanding any other provision to the contrary, any person who is employed to teach adult or community college classes for not more than 60 percent of the hours per week considered a full-time assignment for permanent employees having comparable duties shall be classified as a temporary employee, and shall not become a probationary employee under the provisions of Section 13446."

In *Balen* v. *Peralta Junior College Dist., supra,* the court first considered the law, as it existed prior to the adoption of section 13337.5 in 1967, with respect to the rights of an instructor who for four and one-half years had been continuously rehired in the same position on a part-time teaching assignment. The court held that the provisions of sections 13334, 13337 (fn. 4 above) and 13446 (fn. 3 above) applied to part-time employment, and that tenure could be attained by a part-time employee. (11 Cal.3d at p. 829. See also § 13348.05 [recognizing the status of "part-time regular employee"]; *Holbrook* v. *Board of Education, supra,* 37 Cal.2d 316, 331; *Ferner* v. *Harris* (1975) 45 Cal.App.3d 363, 368 [119 Cal.Rptr. 385]; and *Crawford* v. *Board of Education* (1937) 20 Cal.App.2d 391, 397 [67 P.2d 348]. Cf. *Campbell* v. *Graham-Armstrong, supra,* 9 Cal.3d 482, 486-489.) The court after examining the foregoing sections concluded: "In 1965 the Education Code required that a teacher hired for a full year (§ 13334), or whose duties continued past the first three school months (§§ 13337, 13446) be classified probationary, unless designated permanent or substitute. Because Balen worked for more than three months his first year, was hired thereafter for a full year, and was not considered a permanent or substitute teacher, he meets the statutory prerequisites for probationary employment." (11 Cal.3d at pp. 827-828, fns. setting forth text of statutes, omitted.)

The teacher in this case falls within the foregoing formula and would have become a contract (probationary) employee in the 1973-1974 school

year, unless the provisions of section 13337.5 preclude her attaining such status. The district contends that the provisions of the fourth paragraph of that section control, and that it is authorized to hire a certificated employee as a temporary part-time employee "for not more than 60 percent of the hours per week considered a full-time assignment for employees having comparable duties" ad infinitum, without that employee attaining any rights as a contract (probationary) or regular (permanent) employee. In examining section 13337.5 (fn. 3 above) to determine whether it should be applied retroactively the *Balen* court commented, "The paragraph of section 13337.5 which the district cites to justify its classification of Balen was not part of the original bill submitted to the Legislature, but was added in committee. (1 Sen. J. (1967 Reg.Sess.) p. 863.) The principal portion of the original bill created a long-term temporary status, a classification within which the district urges Balen falls. That part of the statute, however, specifically limits such a classification to persons employed for not more than 'two semesters or quarters within any period of three consecutive years.' Failing to consider this limitation, the district selectively relies on the last paragraph of the statute alone. Because Balen held his position for over four years, he could not be classified under section 13337.5 for more than two of those years, a circumstance which would leave him unclassified the remainder of the time." (11 Cal.3d at p. 829. See also *Ferner* v. *Harris, supra,* 45 Cal.App.3d 363, 371-372.)[6]

---

[6]Despite due respect for the authors of the cited opinions we must confess that as an original proposition we would come to a conclusion opposite to that they have expressed. Senate Bill No. 316, as originally introduced extended, in the case of a "junior college" (subsequently, 1970, "community college"), the permissible classification of one employed as a temporary employee from three or four months of the school term (see §§ 13337 and 13346) to a period "less than a complete school year (subsequently, 1970, "a complete school year"), but not less than a complete semester during a school year" upon and subject to the conditions now found, as expanded in 1969, in section 13337.5. The amendments in the Senate, referred to in *Balen,* added "or quarter" following semester, and the following paragraph, "Notwithstanding any other provision to the contrary, any person who is employed for 15 hours or less per week to teach adult or junior college classes shall be classified as a temporary employee, and shall not become a probationary employee under the provisions of Section 13446." Thereafter, in the Assembly at the author's request the last paragraph was amended to read as it is found today. (2 Assem. J. (1967 Reg.Sess.) p. 3006.) It is arguable that the need of junior (now community) colleges to furnish diverse programs in the community was handicapped by the inflexibility of a system which would give part-time tenure to those who were employed for part-time work. That it was the intention of the Legislature to give such relief is manifest from the Legislative Council's Digest. With respect to the Senate amendments he wrote, "Provides that any person employed for 15 hours or less per week to teach adult or junior college classes is a temporary, not probationary employee." When the bill was amended in the Assembly he reported, "Provides that any person employed for 15 hours or less per week to teach adult or junior college classes for not more than 60 percent of the hours per week considered a full-time assignment for

From the foregoing we conclude that at the commencement of the third consecutive semester of the teacher's employment as a temporary employee, the district was required to classify her as a contract (probationary) employee. Section 13346 (fn. 3 above) mandates that the governing board of the district shall employ each certificated person as either a contract employee, regular employee, or temporary employee. That authority, however, may only be exercised in accordance with the statutory provisions governing the categories involved. With respect to article 3.5, section 13345 states: "The provisions of this article govern the employment of persons by a district to serve in positions for which certification qualifications are required and establish certain rights for such employees. Other provisions of the law which govern the employment of persons in positions requiring certification qualifications by a school district or establish rights and responsibilities for such persons shall be applied to persons employed by community college districts in a manner consistent with the provisions of this article." It therefore appears that, as in *Balen,* section 13334 (fn. 4 above) renders probationary (here contract) employees the catch-all classification. (See 11 Cal.3d at pp. 827-828.) This conclusion is fortified by the provisions of the last paragraph of section 13336 (fn. 3 above). It manifests an intention that when a certificated employee has been employed for one complete school year as a temporary employee, and that person is employed for the following school year in a position requiring certification qualifications, he shall be classified by the governing board as a probationary (here contract) employee. (See also § 13337, fn. 4 above, and § 13446, fn. 3 above.)

We conclude that in the spring semester of the 1973-1974 school year the teacher was a contract (probationary) employee who was entitled to a notice under section 13346.30 (fn. 1 above). In order to ascertain the effect of the failure to give that notice it must be determined whether the employee was impliedly working under her first contract, or her second consecutive contract. It is clear that there was no express contract under the provisions of section 13346.05,[7] or subdivision (b) of section 13346.20

permanent employees having comparable duties is a temporary, not probationary employee."

The interpretation in *Balen* appears irrational in view of the fact that the last paragraph begins "Notwithstanding any other provision to the contrary. . . ." Moreover it disregards the intention of any legislator who voted for the bill on the strength of the Legislative Council's analysis. We feel foreclosed by *Balen* and any change in the reading of the section must lie with the court that wrote that opinion, or the Legislature.

[7]Section 13346.05 reads: "The governing board of a district shall employ persons to serve in positions requiring certification qualifications for the first academic year of his

(fn. 1 above), as contemplated by section 13345.05, subdivision (a) (see fn. 2). The last paragraph of section 13336 (fn. 3 above) states that when a temporary employee, employed for one complete school year as a temporary employee, is re-employed for the following year in a position requiring certification qualifications he shall not only "be classified by the governing board as a probationary [here contract] employee," as has been noted above, but also "the previous years employment as a temporary employee shall be deemed one year's employment as a probationary employee for purposes of acquiring permanent status."

It may be contended that the teacher in this case falls within that formula. She was employed as a temporary employee for each of the two semesters of the 1972-1973 school year, and in the following school year 1973-1974, she was likewise employed for each of the two semesters. We do not determine whether that contention is groundless because in the first semester of the first year the employment clearly was, and was contracted for, as a substitute. Nor do we determine whether the provisions involved require that there be a contract for the complete year, in each of the two years.[8] We do note that the provisions of section 13336 were adopted at a time when no tenure was acquired until after employment for three complete consecutive school years (§ 13304); whereas, after September 1, 1972, a community college certificated employee could acquire tenure after completing two full years. Despite the admonition in *Balen* to strictly construe temporary and substitute employment, it appears that constructive regular tenure should not be expanded because of the statutory change.

The Legislature foresaw such difficulties. The second sentence of section 13346.05 (fn. 7 above) expressly states, "Any person who, at the time an employment contract is offered to him by the district, is neither a regular employee of the district nor a contract employee then serving under a second contract entered into pursuant to Section 13346.20 shall

employment or portion thereof by contract. Any person who, at the time an employment contract is offered to him by the district, is neither a regular employee of the district nor a contract employee then serving under a second contract entered into pursuant to Section 13346.20 shall be deemed to be employed for 'the first academic year of his employment or a portion thereof.' "

[8]We note, however, that the provisions under review are incorporated in a section dealing with the classification of substitute employees. Also it is established that the district cannot avoid the effect of continuous consecutive yearly service by dividing up the contract periods, or by dismissing and rehiring. (See *Baker* v. *Peralta Junior College Dist., supra,* 11 Cal.3d 821, 829-831; *Beseman* v. *Remy, supra,* 160 Cal.App.2d 437, 441; and *Mitchell* v. *Board of Trustees, supra,* 5 Cal.App.2d 64, 68.)

be deemed to be employed for 'the first academic year of his employment or a portion thereof.' " ▆ The time that the contract was offered to the teacher in this case must be deemed the time at which the teacher was offered the third consecutive semester of temporary employment, whether it be for the fall or for the spring semester of the 1973-1974 school year. In either case the employment that year by statute must be considered as that of an employee under his first contract.

There is no question but that the teacher was only a part-time employee. By the same token, we look at the employment in the first implied contract year and find that it was 60 percent of the hours per week which were considered a full-time assignment. The 100 percent taught as a substitute in the fall of 1972 should not raise the proportion. In that semester she was clearly a substitute teacher. To permit her to claim the extra hours as part of her continuous temporary assignments would discourage the use of a part-time employee in a long-term substitute position, to the detriment of both the teacher and the district.

We, therefore, conclude that the teacher was entitled to be classified as a contract (probationary) 60 percent part-time certificated employee by at least the spring semester of 1973, and that by virtue of the failure of the governing board to make the decision required by section 13346.20, and to give the notice required by section 13346.30, she was entitled to employment as an employee of that category for a second contract year.

### III

▆ Since the appellants prayed for a writ of mandate "directing that [the teacher] be returned to the [district] as a regular, permanent employee of the District with back pay for the 1974-75 school year," and she was not entitled to that relief, the trial court properly denied the petition for writ of mandate. We note that in their points and authorities the contention was modified to the following: "By operation of law, [the teacher] is now a tenured or regular employee of the San Francisco Community College District at a 70 percent of full time rate."

Admittedly the teacher did not present herself for employment. According to her counsel she left the school at the start of the 1974-1975 school year because she found a better paying position; that is a full-time position as opposed to a part-time position which she could have had with the district. The district contends that her failure to accept the part-time employment, which was consistent with her prior employment,

was in effect a resignation. It is established that a voluntary resignation terminates both the obligation of the teacher to render services to the district, and the obligation of the district to reemploy the teacher. In *Leithliter* v. *Board of Trustees* (1970) 12 Cal.App.3d 1095 [91 Cal.Rptr. 215], the court observed: "Appellants offered to terminate their employment with the respondent district and their offer was accepted. Obviously they derived certain advantages from this transaction, such as the privilege to seek and accept employment elsewhere without violating their contract with respondent. If we interpreted section 13338.1 to mean that in spite of the voluntary severance of the employment relationship between appellants and respondent, appellants nevertheless retained whatever rights they may have had to be assigned to the duties which they evidently prefer, the section would be a 'heads-you-win-tails-I-lose' proposition from the standpoint of the employing district. In the case at bar it would be unable to hire any replacements for appellants without advising them that, in case it should lose the pending litigation, appellants would have to be restored to their jobs. In the meanwhile appellants could seek employment elsewhere, without any obligation to respondent to return to their jobs, should they ultimately prevail." (12 Cal.App.3d at pp. 1099-1100. Note also, § 13401.)

In this case there was no formal resignation. Nevertheless it has been recognized that a refusal to teach is tantamount to a resignation. (*Fidler* v. *Board of Trustees* (1931) 112 Cal.App. 296, 312 [296 P. 912]. See also *Snider* v. *Severance* (1932) 126 Cal.App. 109, 112-113 [14 P.2d 328].) *Fidler* has been criticized for holding that the evidence supported a finding that there was a refusal to teach, rather than recognizing that the teacher was not bound to abandon views held in good faith as to the compensation to which he is entitled on pain of forfeiture of his status. (See *Abraham* v. *Sims* (1935) 2 Cal.2d 698, 713 [34 P.2d 790, 42 P.2d 1029].) This is not a similar situation. The teacher failed to communicate the views she presently holds to the district until she filed the present suit March 11, 1975. This is not a case in which the teacher was erroneously discharged (see *Balen* v. *Peralta Junior College Dist., supra,* 11 Cal.3d 821, 825 and 831), nor is it a situation in which the teacher accepted reduced part-time employment in fulfillment of her duty to mitigate damages (see *Vittal* v. *Long Beach Unified Sch. Dist., supra,* 8 Cal.App.3d 112, 123), nor was there any act or subterfuge on the part of the district which induced the resignation of the teacher. (See *Sherman* v. *Board of Trustees* (1935) 9 Cal.App.2d 262, 266-267 [49 P.2d 350]; and *Mitchell* v. *Board of Trustees, supra,* 5 Cal.App.2d 64, 68.) Under the circumstances presented by this record the teacher was not entitled to any relief.

It appears that in order to preserve her status the teacher should have sought a leave of absence before securing full-time employment elsewhere. (See §§ 13454 and 13464.) That she did not do. It may be contended that both the district and the teacher were ignorant of her right to status as a second year contract part-time certificated employee under sections 13346.30 and 13346.20. Apparently she did not discover that she had any such rights until she received the legal advice which resulted in the filing of this action. She did not then seek relief through administrative channels, but immediately filed an action. The district claims any action is barred by the teacher's failure to pursue administrative remedies. (See *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 291-296 [109 P.2d 942, 132 A.L.R. 715].) On the other hand the court pointed out in *Balen,* that when there is a failure to give notice of a dismissal and right to hearing under section 13443 (cf. § 13346.30, fn. 1 above), the district cannot contend that the employee should have demanded a hearing (11 Cal.3d at p. 831). So, too, in *Vittal,* the court observed, "The provisions for permanent status are contained in the Education Code and if they have been met the attainment of permanent status is automatic. No application need be made, nor is any affirmative action on the part of the school board necessary [citation]. Thus, whether petitioner sufficiently exhausted her administrative remedies is not in issue. If she has met the requirements, she is entitled to permanent status." (8 Cal.App.3d at pp. 118-119.) In each of those cases the teacher had made his or her position known to the governing board of the school district. In the former case there was a dismissal, and in the latter a reduction in the assigned teaching hours. Here, on the other hand, the teacher in effect walked off the job without making her claims known. Presumably it was necessary for the district to secure another temporary part-time employee to carry the part-time work which the teacher rejected. Under those circumstances, although there was no formal administrative hearing to be either conducted or waived, the teacher is estopped to demand and receive reemployment at her former status in preference to someone else who may have been employed to carry on the instructional duties formerly assigned to her.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.