[Civ. No. 35757. Second Dist., Div. Five. Nov. 20, 1970.]

MARGERY LEITHLITER, Plaintiff and Appellant, v.
BOARD OF TRUSTEES OF LANCASTER SCHOOL DISTRICT et al.,
Defendants and Respondents.

[Civ. No. 35897. Second Dist., Div. Five. Nov. 20, 1970.]

RANDALL RISDON, Plaintiff and Appellant, v.
BOARD OF TRUSTEES OF LANCASTER SCHOOL DISTRICT et al.,
Defendants and Respondents.

(Consolidated Appeals.)

## COUNSEL

Donald W. Odell and Lawrence B. Trygstad for Plaintiffs and Appellants.

John D. Maharg, County Counsel, and Louis S. Gordon, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**KAUS, P. J.**—These two appeals which pose common questions of law are consolidated for decision by this court and for the court's ruling on motions to dismiss the appeals.

Each appeal is from the superior court's denial of a petition for a writ of mandate which sought to compel the respondent school district to permit petitioners to perform duties as the district's psychologist and psychometrist respectively and not to assign them to other duties.[1] In each case the judgment denying the writ was entered on September 23, 1969. Notice of appeal were filed on October 2, 1969.

The motions to dismiss show that on October 25, 1969, the appellant Leithliter rendered her written resignation effective November 1, 1969,[2] and that some time in January 1970, the appellant Risdon similarly resigned, effective February 1, 1970.[3] Both resignations were approved and ratified by the respondent district.

The motions to dismiss are made on the self-evident ground that the appeals have become moot. They are opposed on the following basis:[4] On

---

[1]Risdon's complaint alleged that he is "the holder of the following credentials issued by the Board of Education, State of California: "Life General Secondary Credential; and General Pupil Personnel Credential with designated services as a psychologist." Leithliter's complaint alleges the following credentials: "Life General Elementary Credential; and General Pupil Personnel Credential with designated services as a psychometrist."

[2]"Please accept my resignation, which will terminate fifteen years of service to children of the Lancaster School District, effective 1 November 1969.

"The physical and mental stresses engendered by and which would normally accompany the actions taken by the district Board of Trustees and administration in the past year render it impossible for me to carry out the duties belatedly assigned to me after the beginning of the current contract year in an educational assignment outside of my experience and training."

[3]"Please accept my resignation from my current contract as of February 1, 1970. My present assignment is inappropriate to my training, and has been a factor in the development of some personal health problems."

[4]We only set forth the showing made by the appellant Risdon. That of the appellant Leithliter is identical except as to some dates.

August 20, 1969, almost two weeks after the superior court had indicated that it would deny the petition for a writ of mandate and ordered findings to be prepared, Risdon's counsel addressed a letter to the respondent board advising it that Risdon did not acquiesce in his assignment to classroom duties, that if he did so serve, the service would not constitute a waiver of his right to act as the district's psychologist and that he demanded the salary which he was paid as a psychologist during the preceding school year, together with certain increases "as if [Risdon] had been assigned to the position of . . . psychologist for the school year 1969-70."

After Risdon's resignation, on May 18, 1970, he served a certain "Notice and Demand" copied in the footnote[5] on the respondent board. In a declaration submitted to this court, he states that his "resignation was submitted with the intention of resigning only from [his] then current employment as a classroom teacher . . . and without the intention of terminating [his] employment, or [his] right to employment, as school psychologist nor with the intention to waiving [sic] any of the benefits provided under Chapter II, Division 10 of the Education Code . . . and, in particular [his] right to be permanently classified as psychologist in said School District." He states that the resignation was tendered only because his assignment to a teaching position was "wrongful, inappropriate to [his] training and due to the development of personal health problems caused by the frustration, uncertainty and tension of endeavoring to perform duties foreign to [his] training and experience. . . ." He further claims that the assignment to classroom duties was "punitive in nature."

It is appellants' legal position that their resignations were merely offers to terminate the then current contracts of employment as classroom teachers

---

[5]"Please take notice that the undersigned, a permanent certificated employee of Lancaster School District of Los Angeles County, demands reinstatement of his position as school district psychologist. Further take notice that the resignation of the undersigned given under the date of January 29, 1970 is null and void and that the undersigned did not waive any benefits provided under Chapter 2, Division 10 of the Education Code of the State of California by tendering the letter of resignation from the position of classroom teacher to which the undersigned was wrongfully assigned.

"Please be informed that the undersigned is ready, willing and able to perform duties as school district psychologist and to render the particular kind of psychological services and testing services furnished by the school district during the previous and current school year.

"The undersigned does not acquiesce in the Board of Trustees [sic] efforts to terminate his services as school district psychologist in any way nor to [sic] expressly or by implication waive the right to be reinstated in said position.

"This notice is based in part upon the provisions of Section 13338.1 and 13267 of the Education Code of the State of California.

"Copies of these sections of the Education Code are attached to this notice by reference."

and that by accepting the resignations, the respondent board had no power to destroy appellants' basic claim that they were entitled to tenure as psychologist and psychometrist, respectively. In this claim appellants rely on sections 13338.1 and 13267 of the Education Code referred to in the "Notice and Demand" of May 10, 1970. These sections are copied in the footnote.[6]

■ We do not believe that section 13338.1 of the Education Code applies. Resignations of employees are specifically provided for in section 13401 which, we presume, means precisely what it says.[7] ■ Resignations are contractual in nature. (*Sherman* v. *Board of Trustees,* 9 Cal. App.2d 262, 266 [49 P.2d 350].) Appellants offered to terminate their employment with the respondent district and their offer was accepted. Obviously they derived certain advantages from this transaction, such as the privilege to seek and accept employment elsewhere without violating their contract with respondent. If we interpreted section 13338.1 to mean that in spite of the voluntary severance of the employment relationship between appellants and respondent, appellants nevertheless retained whatever rights they may have had to be assigned to the duties which they evidently prefer, the section would be a "heads-you-win-tails-I-lose" proposition from the standpoint of the employing district. In the case at bar it would be unable to hire any replacements for appellants[8] without advising them that,

---

[6]Section 13338.1: "Except as provided in Sections 13406 and 13448, any contract or agreement, express or implied, made by any employee to waive the benefits of this chapter or any part thereof is null and void.

"Notwithstanding provisions of this or any other section of this code, governing boards of school districts may employ persons in positions requiring certification qualifications on less than a full-time basis."

Section 13267: "Nothing in Sections 997 to 1002, inclusive, Sections 12901 and 13004, inclusive, Sections 13006 and 13553, inclusive, and Sections 13555 to 14775, inclusive, shall be construed in such manner as to deprive any person of his rights and remedies in a court of competent jurisdiction on a question of law and fact."

[7]Section 13401: "Governing boards of school districts shall accept the resignation of any employee and shall fix the time when the resignation takes effect, which shall not be later than the close of the school year during which the resignation has been received by the board."

[8]One of the issues tendered by the petitioners below which was not decided by the court, is whether the respondent district had decided to discontinue the "particular kind of service" (Ed. Code, § 13447) which appellants had been rendering to the district. It was the district's position that it had done so by contracting for mental health services with an outside corporation as it is permitted to do by section 11805 of the Education Code. The reason why the trial court never reached that issue is that it decided that appellants had never achieved tenure status in their positions of psychologist and psychometrist, respectively, but had achieved such status only as permanent classroom teachers. The determination of the correctness of that ruling would involve an interpretation of section 13314.5 of the Education Code, a section

in case it should lose the pending litigation, appellants would have to be restored to their jobs. In the meanwhile appellants could seek employment elsewhere, without any obligation to respondent to return to their jobs, should they ultimately prevail.

Nor do we see how appellants can derive any comfort from section 13267 of the Education Code. The dismissal of this appeal for the reason that it is moot does not deprive them of their "rights and remedies in a court of competent jurisdiction on a question of law [or] fact," unless the section is to be interpreted as giving employees of school districts a right that such courts decide moot questions—a right possessed by no other litigant.

We recognize, of course, that if appellants' resignations were coerced they would be of no effect (*Odorizzi* v. *Bloomfield School Dist.,* 246 Cal. App.2d 123, 130-135 [54 Cal.Rptr. 533]; *Mitchell* v. *Board of Trustees,* 5 Cal.App.2d 64, 68 [42 P.2d 397]) but we cannot place any credence in the apparent contention that appellants were coerced into resigning by being assigned duties for which they were not qualified. Risdon's complaint alleges that he holds a "Life General Secondary Credential" issued by the Board of Education, State of California. The court found in an unchallenged finding that though he was first employed by the respondent district in September 1958, he did not start to serve as a psychologist until two years later and even his annual employment contracts for the school year beginning in 1961 through 1968 described him as a teacher, although they do indicate that his contemplated duty in 1961-1962 was to act as a psychometrist and as a psychologist in the later years. These contracts contain the following provision: "The Board of Trustees reserves the right to make any assignment that your credential authorizes and to change that assignment at its discretion."

Leithliter pleaded in her complaint that she holds a "Life General Elementary Credential" and that she had served as a classroom teacher for three years beginning in 1958. Her contracts are similar to Risdon's.

If it is true, as the resignations state, that appellants became ill because of their new duties, they did not have to resign, but could have asked for a leave of absence under section 13455 of the Education Code.

 The rule is still as it was stated in *Mitchell* v. *Board of Trustees, supra,* 5 Cal.App.2d at p. 69: "There is nothing in the tenure of [*sic*] law which interferes with the general power and right of a board of education to assign teachers to particular classes and to particular schools in ac-

which, according to respondent, "does not represent the finest example of clear and unambiguous legislative draftsmanship." After struggling with it for some time before respondent filed its motions to dismiss, we are bound to agree.

cordance with its judgment and desire reasonably exercised. A teacher, in acquiring a permanent status, does not thereby acquire a vested right to teach any certain class or in any certain school. While a board would have no right to evade the plain meaning of the tenure act by assigning a teacher to a class of work for which he was not qualified, for the purpose of compelling his resignation, it has the power to reasonably change assignments with respect to a permanent teacher so long as the work assigned is of a rank and grade equivalent to that by which the permanent status was acquired and so long as the assignment is one for which the teacher in question is qualified." (See also *Adelt* v. *Richmond Sch. Dist.*, 250 Cal. App.2d 149, 152 [58 Cal.Rptr. 151]; and *Finot* v. *Pasadena City Bd. of Education*, 250 Cal.App.2d 189, 195 [58 Cal.Rptr. 520].)

 It is, of course, quite immaterial that appellants, when they did resign from the respondent district, harbored a secret intent with respect to the effect of their resignations, should the trial court's judgment have been in error. We are quite satisfied that, were we to reverse on the merits, the respondent could not be forced to reinstate appellants to their positions. Therefore the appeals are moot.

The appeals are dismissed.

Aiso, J., and Reppy, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 14, 1971.