[Civ, No. 6224. Fifth Dist. Mar. 31, 1983.]

CALIFORNIA TEACHERS' ASSOCIATION et al.,
Plaintiffs and Respondents, v.
GOVERNING BOARD OF CENTRAL UNION HIGH SCHOOL
DISTRICT et al., Defendants and Appellants.

COUNSEL

Floyd R. B. Viau, County Counsel, Max E. Robinson, Assistant County Counsel, Brian J. McCully and Patricia Noyes, Deputy County Counsel, for Defendants and Appellants.

Biddle, Walters & Bukey and Christian M. Keiner as Amici Curiae on behalf of Defendants and Appellants.

Tuttle & Tuttle, Ernest H. Tuttle III and Kay M. Tuttle for Plaintiffs and Respondents.

OPINION

**ANDREEN, J.—**

### STATEMENT OF THE CASE

This is an appeal from a judgment of the Superior Court of Fresno County granting declaratory relief and issuing a writ of mandate. The action was filed

by respondents herein California Teachers' Association (CTA) and Bill Baird, a permanent teacher of the Central Union High School District (District) against the governing board of the Central Union High School District (Board) seeking an interpretation of Education Code section 44865 and reassignment of respondent Baird to teach at the Central campus.[1]

## STATEMENT OF FACTS[2]

Appellant District is a public school district situated in the County of Fresno, organized and operated pursuant to the laws of the State of California. Appellant Board is the governing board of the District. Respondent CTA is a California nonprofit corporation which serves as an employee organization representing its members in their employment relationships with the District and Board as to all employment-related matters. Respondent Bill Baird is a member of respondent CTA and is a permanent, certificated employee of the District.

Baird has taught for the District at the Central Union High School campus for several years. He holds a general secondary credential which authorizes him to teach in all grades of any public secondary school, which includes a continuation high school, and in the seventh and eighth grades of any public elementary school in the state. Baird also holds a secondary administrative credential.[3]

Prior to the commencement of the 1980-1981 school year, Baird was notified that he would be assigned to teach at Pershing Continuation High School for the 1980-1981 school year. Baird notified the District that he did not wish to be assigned to Pershing Continuation High School and that he did not consent to such an assignment, citing Education Code section 44865. Thereafter, on

---

[1]An amicus curiae brief has been filed by the California School Boards Association and the Association of California School Administrators in support of appellants District and Board.

[2]This case comes to the court pursuant to rule 6 of the California Rules of Court on an agreed statement of facts. On July 13, 1981, this court ordered the record augmented, upon motion of respondents, to include the teaching credentials attached to the points and authorities submitted by the District to the trial court.

[3]Credentials available to teachers in the State of California include:
1. General-elementary credential (no longer issued after 1976).
2. General-junior high credential (no longer issued after 1976).
3. General-secondary credential (no longer issued after 1976).
4. Standard-elementary credential (issued from 1964 to 1976 under the Fisher Bill).
5. Standard-secondary credential (issued from 1964 to 1976 under the Fisher Bill).
6. Ryan single-subject credential (under the Ryan Act, Ed. Code, § 44200 et seq., issued from Feb. 1, 1973, to the present).
7. Ryan multiple-subject credential (issued from Feb. 1, 1973, to the present under the Ryan Act).

August 28, 1980, District notified Baird in writing that his assignment would remain unchanged. There is no contention that the assignment was unreasonable or done in the spirit of retaliation.[4]

Baird and CTA thereafter demanded, in writing, that Baird be reassigned to the Central Union High School campus for the 1980-1981 school year. District refused.

Thereafter, Baird and CTA filed in the Fresno County Superior Court a petition for writ of mandate, as well as a complaint for declaratory and injunctive relief, seeking to terminate Baird's assignment to Pershing Continuation High School and to compel the District to reassign Baird to the Central Union High School campus. In its judgment ordering the issuance of such writ, the trial court found that Baird's general secondary credential authorizes him to teach at Pershing Continuation High School. However, the trial court interpreted California Education Code section 44865 to require the consent of a teacher before he or she may be assigned to teach at a continuation high school. It held that since Baird did not consent to such an assignment, he was entitled to the relief sought.

## DISCUSSION

The sole issue presented in this appeal is whether former Education Code section 44865[5] requires a school district to obtain the consent of a certificated employee prior to assigning that employee to a continuation high school, despite the fact that such teacher holds a general secondary credential. For the reasons set forth herein, we conclude that such consent is not required.

---

[4]Under prior statutory and case authority the holder of a teaching credential, such as respondent Baird, could be assigned or reassigned by the District to any position within the specific credential authorization, so long as the reassignment was "reasonable" and the reassigned position was "within the scope of the certificate under which tenure was acquired" (*Adelt* v. *Richmond Sch. Dist.* (1967) 250 Cal.App.2d 149, 152 [58 Cal.Rptr. 151], italics omitted) or "the work assigned is of a rank and grade equivalent to that by which the permanent status was acquired . . . ." (*Mitchell* v. *Board of Trustees* (1935) 5 Cal.App.2d 64, 69 [42 P.2d 397].) (See *Thompson* v. *Modesto City High School Dist.* (1977) 19 Cal.3d 620, 623-624 [139 Cal.Rptr. 603, 566 P.2d 237].)

It is also well established that teacher assignments and reassignments cannot be in retaliation for the exercise of protected constitutional rights. (*Adcock* v. *Board of Education* (1973) 10 Cal.3d 60 [109 Cal.Rptr. 676]; *Finot* v. *Pasadena City Bd. of Education* (1967) 250 Cal.App.2d 189 [58 Cal.Rptr. 520].) There is no question in this case of any retaliation involved in the reassignment, and respondent concedes that the assignment to a continuation high school was one authorized by his general secondary credential.

[5]Statutory references are to the Education Code, unless otherwise indicated. References to Education Code section 44865 are to the 1978 amendment to that section, unless otherwise indicated.

At the time of respondent's reassignment and at the time of trial herein, Education Code section 44865 provided as follows: "In lieu of any other credential authorizing the teaching in a position for which qualifications are prescribed by this section, a valid teaching credential issued by the State Board of Education or the Commission for Teacher Preparation and Licensing, based on a bachelor's degree, student teaching, and special fitness to perform, shall be deemed qualifying for assignment as a teacher in the following assignments, provided that the assignment of a teacher to a position *for which qualifications are prescribed by this section* shall be made only with the consent of the teacher:

"(a) Home teacher.

"(b) Classes organized primarily for adults.

"(c) Hospital classes.

"(d) Necessary small high schools.

"(e) Continuation schools."[6] (Amended by Stats. 1978, ch. 924, § 1, p. 2894, (italics added.)

The underlined language "for which qualifications are prescribed by this section" immediately precedes the provision requiring teacher consent and modifies it. Unless we are to disregard the phrase, the only way to give it meaning is to construe the statute so that employee consent is required only as to those teachers who are granted eligibility to teach by virtue of section 44865. To disregard the phrase would be contrary to the rule that a court, where reasonably possible, should construe a statute so as to give force and effect to all its parts and sections. (Code Civ. Proc., § 1858; *County of Orange* v. *Flournoy* (1974) 42 Cal.App.3d 908, 914 [117 Cal.Rptr. 224].)

---

[6]Subdivisions (f) and (g) regarding alternative schools and opportunity schools were added to the statute by amendment in 1980. In 1981 an amendment deleted at the beginning of the section the phrase "In lieu of any other credential authorizing the teaching in a position for which qualifications are prescribed by this section" and added subdivisions (h) and (i) to add juvenile court schools and county community schools to the enumerated assignments. Thus, the statute currently reads as follows: "A valid teaching credential issued by the State Board of Education or the Commission for Teacher Preparation and Licensing, based on a bachelor's degree, student teaching, and special fitness to perform, shall be deemed qualifying for assignment as a teacher in the following assignments, provided that the assignment of a teacher to a position for which qualifications are prescribed by this section shall be made only with the consent of the teacher: [¶] (a) Home teacher. [¶] (b) Classes organized primarily for adults. [¶] (c) Hospital classes. [¶] (d) Necessary small high schools. [¶] (e) Continuation schools. [¶] (f) Alternative schools. [¶] (g) Opportunity schools. [¶] (h) Juvenile court schools. [¶] (i) County community schools." (Amended by Stats. 1978, ch. 924, § 1, p. 2894; Stats. 1980, ch. 260, § 1, p. 533; Stats. 1981, ch. 1021, § 1, p. 3932.)

As construed, section 44865 authorizes a teacher to teach at a continuation high school even though his or her credential would not otherwise be sufficient. Included is a teacher with a general-elementary or a general-junior high school credential, a teacher without the "fifth year" of college education (Ed. Code, § 44259, subd. (b)), or a teacher with a single-subject authorization. The Commission for Teacher Preparation and Licensing urged the Governor to approve the legislation because of the limited number of teachers holding a general-secondary credential.[7]

---

[7]"State of California                                             Edmund G. Brown Jr., Governor

"COMMISSION FOR TEACHER PREPARATION AND LICENSING                              [seal]
1020 O Street
Sacramento 95814
445-0184

"August 29, 1978

"Honorable Edmund G. Brown, Jr.
Governor of California
State Capitol
Sacramento, California 95814

"Attention: Mr. Robert Williams

"Dear Governor Brown:
    "Senate Bill 433 (Stiern), Teacher
    Qualifications: Special School Classes

"The Commission for Teacher Preparation and Licensing strongly supports Senate Bill 433 (Stiern), which provides relief from the single-subject authorization of 'Ryan' and 'Fisher' credentials in order to more effectively staff and utilize teachers in special schools, classes, or program organization, on the following basis:

    "1) possession of a valid credential based on a baccalaureate degree including student teaching; and,

    "2) special fitness to perform the assignment; and,

    "3) the teacher's consent.

"We have learned that as the need and demand for a broadened curriculum increases in these special situations and the supply of teachers holding the General Secondary Credential decreases, it is becoming increasingly difficult to staff these special type classes and or programs.

"For example, the average teacher in a necessary small high school has four separate subject-matter preparations in as widely varying subject areas as English, Psychology, and General Math. It has been difficult to staff this and other special type instructional programs with legally credentialed teachers in three or four subjects under the Fisher Act. It will virtually be impossible under the Ryan Act. The current leveling off of enrollments may make this problem even more difficult.

"[Letter continued on second page.]

"For the aforementioned reasons, we respectfully request your approval of Senate Bill 433 (Stiern).

                                                    "Sincerely,

                                                    "[Signature.]

                                                    "Peter L. LoPresti
                                                      Executive Secretary"

Several other statutes permit the board to assign teachers to teaching positions beyond the scope of their credentials if the teachers consent to such assignment. (Ed. Code, §§ 44258, 44263, 44264.)[8]

As interpreted by the Attorney General,

"[S]ections 44258, 44263, and 44264 were not intended to and do not infringe upon a governing board's general power of assignment. On the contrary, these statutes were intended to expand a governing board's power of assignment by permitting the assignment of a teacher *outside the scope of his credential* where the teacher not only meets certain enumerated requirements, but also consents to the assignment. . . .

"To summarize, it is our opinion that a government [*sic*] board may assign a teacher, without his consent, anywhere within the scope of the credential under which the teacher, if probationary, is employed or if tenured, obtained tenure." (61 Ops.Cal.Atty.Gen. 353, 362-363 (1978), italics added.)

There is good reason for the requirement of consent if a teacher is assigned outside the scope of his or her expertise. Evaluation is made on the basis of performance of the assigned task. A teacher may be unwilling to risk a critical evaluation while teaching outside the ambit of his or her credential.

We must address the effect of the Legislative Counsel's Digest to the 1978 amendment which provides in pertinent part as follows: "This bill would also prohibit the assignment of a teacher to the position of a home teacher or as a

---

[8]Education Code section 44258 expressly provides: "A teacher who is authorized for single subject instruction may be assigned, with his consent, to teach any subject in his authorized fields at any grade level; preschool; kindergarten and grades 1 to 12, inclusive; or in classes organized primarily for adults, and similarly, a teacher authorized for multiple subject instruction may be assigned, with his consent, to teach in any self-contained classroom; preschool; kindergarten and grades 1 to 12, inclusive; or in classes organized primarily for adults; and similarly, a teacher authorized as a specialist teacher may be assigned, with his consent, to teach in his area of specialization at any grade level; preschool; kindergarten and grades 1 to 12, inclusive; or in classes organized primarily for adults."

Education Code section 44263 provides: "A teacher licensed pursuant to the provisions of this article may be assigned, with his or her consent, to teach any single subject class in which he or she has 18 semester hours of coursework or nine semester hours of upper division or graduate coursework or a multiple subject class if he or she holds at least 60 semester hours equally distributed among the four areas of a diversified major set forth in Section 44314. A three-semester-unit variance in any of the required four areas may be allowed. The governing board of the school district by resolution shall provide specific authorization for such assignment. The authorization of the governing board shall remain valid for one year and may be renewed annually."

Education Code section 44264 provides: "Notwithstanding any other provision of law, a person holding a credential issued under the laws and regulations in effect on or before December 31, 1971, authorizing teaching in grades 7 to 12, inclusive, in the secondary schools may be assigned, with his consent, to teach grade 6 in a school composed of grades 6, 7, and 8."

teacher in any of such special schools, classes, and programs without the consent of the teacher." (Leg. Counsel's Dig. of Sen. Bill No. 433, 4 Stats. 1978 (Reg. Sess.) Summary Dig., p. 248.)[9] We are thus confronted with a statute which was enacted with an inaccurate Legislative Counsel's Digest.

■ If the language of a statute is ambiguous, it is appropriate to examine the digest in order to ascertain legislative intent. Thus, in *Maben* v. *Superior Court* (1967) 255 Cal.App.2d 708, 713 [63 Cal.Rptr. 439], the court stated: "It has long been the rule that 'Statements in legislative committee reports concerning the statutory objects and purposes, which are in accord with a reasonable interpretation of the statute, will be followed by the courts. And it will be presumed that the Legislature adopted the proposed legislation with the intent and meaning expressed in committee reports.' (45 Cal.Jur.2d, Statutes, § 168, p. 670.) Since the Legislative Counsel is a state official (Gov. Code, § 10200), who is required by law to 'give such consideration to and service concerning any measure before the Legislature as circumstances will permit, and which is in any way requested by . . . the Senate or Assembly, . . .' (Gov. Code, § 10234), it would seem by analogy that it is reasonable to presume that the Legislature adopted section 139.7 of the Civil Code with the intent and meaning expressed in his digest of the bill." (Fn. omitted.)

In *People* v. *Superior Court (Douglass)* (1979) 24 Cal.3d 428 [155 Cal.Rptr. 704, 595 P.2d 139], the question was whether section 2426 of the Business and Professions Code, which declared violation of certain provisions of the State Medical Practice Act (Bus. & Prof. Code, §§ 2000-2528.3) to be a misdemeanor, applied to a statute which stated it was unprofessional conduct to prescribe dangerous drugs without a good faith prior examination and medical indication therefor. (Bus. & Prof. Code, § 2399.5.) The court found that one construction was ". . . at least as reasonable as . . ." another, and noted that the statute was not a model of legislative draftsmanship. In that context, the court said at page 434: "It is reasonable to presume that the Legislature amended those sections with the intent and meaning expressed in the Legislative Counsel's digest. (See *Maben* v. *Superior Court* (1967) 255 Cal.App.2d 708, 713 . . . .)"

---

[9]The digest provides in its entirety as follows: "Ch. 924 (SB 433) Stiern. Teacher qualifications: special school classes.

"Existing law generally requires a fifth year of college level work beyond the bachelor's degree to qualify for a teaching credential.

"This bill would provide that the qualifications of a home teacher and teachers in hospital classes, classes for adults, continuation schools, and necessary small high schools, shall be a valid teaching credential based upon a bachelor's degree, student teaching, and special fitness to perform the duties.

"This bill would also prohibit the assignment of a teacher to the position of a home teacher or as a teacher in any of such special schools, classes, and programs without the consent of the teacher." (Leg. Counsel's Dig. of Sen. Bill No. 433, 4 Stats. 1978 (Reg. Sess.) Summary Dig., p. 248.)

Although the Legislative Counsel's Digest is of obvious assistance when interpreting an ambiguous statute, it is not a part of the law. If a law is clear the Legislative Counsel's Digest must be disregarded. The alternative is to hold that the digest controls contrary language contained in the statute. "When statutory language is thus clear and unambiguous there is no need for construction, and courts should not indulge in it. [Citation.]" (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].)

We note that to interpret the statute to require consent from all teachers reassigned to the enumerated positions would place the statute in direct conflict with section 35035, which authorizes the school district superintendent to "transfer a teacher from one school to another at which the teacher is certificated to serve within the district."[10] Section 35035, subdivision (c), provides for the "well recognized prerogative of the school administrator to control class assignments. . . . [¶] 'The assignment of teachers to classes for which a teacher is certificated is entirely within the discretion of the governing board. . . .'" (*Centinela Valley Secondary Teachers Assn.* v. *Centinela Valley Union High Sch. Dist.* (1974) 37 Cal.App.3d 35, 40 [112 Cal.Rptr. 27].)

It has been well settled since at least 1932 that tenure does not infringe upon the general power of assignment. (*Cullen* v. *Board of Education* (1932) 126 Cal.App. 510, 512-513 [15 P.2d 1227, 16 P.2d 272]; *Mitchell* v. *Board of Trustees, supra,* 5 Cal.App.2d 64, 69; *Matthews* v. *Board of Education* (1962) 198 Cal.App.2d 748, 754 [18 Cal.Rptr. 101]; *Adelt* v. *Richmond Sch. Dist., supra,* 250 Cal.App.2d 149, 152; *Leithliter* v. *Board of Trustees* (1970) 12 Cal.App.3d 1095, 1100-1101 [91 Cal.Rptr. 215]; *Lacy* v. *Richmond Unified Sch. Dist.* (1975) 13 Cal.3d 469, 475, fn. 4 [119 Cal.Rptr. 1, 530 P.2d 1377].) "Subject only to the requirement of reasonableness, a school district is entitled to assign teachers anywhere within their certificate, according to the needs of the district. *Tenure does not bestow on the school teacher a vested right to a specific school or to a specific class level of students within any school.* [Citations.]" (*Adelt, supra,* 250 Cal.App.2d at p. 152, italics in original, approved in *Thompson* v. *Modesto City High School Dist.* (1977) 19 Cal.3d 620, 623 [139 Cal.Rptr. 603, 566 P.2d 237].) The rationale for this rule is quite apparent: "The welfare of school districts demands that they have broad discre-

---

[10]Education Code section 35035, which details the powers and duties of the superintendent of each district provides in pertinent part as follows:

"The superintendent of each school district shall, in addition to any other powers and duties granted to or imposed upon him:

". . . . . . . . . . . . . . . . . . . .

"(c) Subject to the approval of the governing board, assign all employees of the district employed in positions requiring certification qualifications, to the positions in which they are to serve. Such power to assign includes the power to transfer a teacher from one school to another school at which the teacher is certificated to serve within the district when the superintendent concludes that such a transfer is in the best interest of the district."

tion to assign their teachers in the best interests of the school system. Consequently, the courts should not lightly undertake to interfere with the exercise of this discretion, where it is not in conflict with statutory law." (*Adelt, supra,* at p. 153.)

We interpret section 44865 similarly to the interpretation given to sections 44258, 44263 and 44264, which require teacher consent for certain assignments outside the initial authority of the credential, but do not require consent for those assignments by teachers whose credentials already contain authority for such assignments. The purpose of section 44865 is similar to the other enumerated sections in that it is designed to expand rather than restrict the authority of the school board to place willing individuals in job assignments *outside* the scope of their respective credentials.

If the Legislature had desired to require consent of all credentialed employees to the assignments specified in section 44865, it could have done so simply and unambiguously.

We are persuaded that since Baird's general-secondary credential authorizes him to teach at Pershing Continuation High School, he does not come within the terms of section 44865. It follows that he need not consent to an assignment there.

The judgment is reversed.

Franson, Acting P. J., concurred.

**STANTON, J.***—I respectfully dissent.

I believe that Education Code section 44865 should be interpreted in its plain meaning. Thus, *"in place of" any credential* which authorizes the assignment of a teacher to teach at a continuation high school or any other of the enumerated assignments, the qualifications for assignment to continuation high schools are: (1) a valid teaching credential based on a bachelor's degree; (2) student teaching; (3) specific fitness to perform; and (4) *consent.* Accordingly, I would hold that this code section requires a school district to obtain the consent of *all* teachers before transferring them to any of the enumerated assignments.

The majority states "If a law is clear the Legislative Counsel's Digest must be disregarded." I do not view the statute in question, Education Code section 44865, as clearly or as unambiguously written as my fellow justices. Thus, it

---

*Assigned by the Chairperson of the Judicial Council.

becomes necessary to construe the statute. There can be no absolute test in the area of legislative intent. Analysis must be on a case-by-case basis because there are numerous potential sources of legislative intent available to the courts in California, including (1) organizations outside the Legislature (State Bar, Judicial Counsel, Attorney General, California Law Revision Commission, and numerous organizations and state agencies) which give opinions regarding legislative action, and (2) entities within the Legislature (Legislative committees, Legislative Counsel, and the Senate and Assembly Offices of Research). (See Comment, *Legislative Intent* (1981) 12 Pacific L.J. 189.)

The Legislative Counsel's Digest has been used frequently by California courts to discern evidence of legislative intent. (See *People* v. *Tanner* (1979) 24 Cal.3d 514, 520 [156 Cal.Rptr. 450, 596 P.2d 328]; *People* v. *Superior Court (Douglass)* (1979) 24 Cal.3d 428, 434 [155 Cal.Rptr. 704, 595 P.2d 139]; *Rockwell* v. *Superior Court* (1976) 18 Cal.3d 420, 443 [134 Cal.Rptr. 650, 556 P.2d 1101]; *Maben* v. *Superior Court* (1967) 255 Cal.App.2d 708, 713 [63 Cal.Rptr. 439].) Created in 1913, the Legislative Counsel is charged with the duties of preparing legislation in assisting law makers in the initial drafting phase of the legislative process. In addition, the Legislative Counsel is charged with rendering legal opinions on proposed legislation upon a legislator's request. The Legislative Counsel also publishes a short synopsis or analysis of every bill as it is introduced or amended, called the Legislative Counsel's Digest, which precedes the text of every bill. Moreover, the Legislative Counsel is charged with other duties, such as assisting the drafters of initiative measures to be submitted to the voters and advising the Legislature of legislation needed to maintain a particular code or to codify a certain public policy. (Gov. Code, § 10200 et seq.)

The Legislative Counsel's Digest to the 1978 amendment to Education Code section 44865 provided in pertinent part that: "This bill would also prohibit the assignment of a teacher to the position of a home teacher or as a teacher in any of such special schools, classes, and the programs *without the consent* of the teacher." (Leg. Counsel's Dig. of Sen. Bill No. 433, 4 Stats. 1978 (Reg. Sess.) Summary Dig., p. 248, italics added.) It is reasonable to presume that the Legislature amended the statute in question with the intent and meaning expressed in the Legislative Counsel's Digest. Thus, I would uphold the trial court's interpretation of Education Code section 44865—that is, the consent of any teacher, regardless of the nature of the credential held by that teacher, is necessary prior to being assigned to one of the enumerated positions listed in section 44865.

I am also persuaded by the fact that the majority's interpretation of the statute in question treats teachers in the State of California unfairly depending upon

what year they received their teaching credential. For example, if a junior high or high school teacher holding a single-subject credential under the Ryan Act is transferred to teach his or her authorized field at an elementary school or continuation school, he can only be transferred *with* his consent. (Ed. Code, § 44258.) Similarly, an elementary school teacher who holds a multi-subject credential under the Ryan Act can be transferred to teach his authorized field at the secondary level or at a continuation school, but only *with* his consent. (*Ibid.*)[1] However, the majority would hold that a high school or junior high school teacher holding a general-secondary credential could be transferred to teach at a continuation school *without* his consent.[2] I do not think the Legislature intended such disparate treatment.

The question of whether a teacher with a general-secondary credential could be assigned to teach at adult school has been considered by the Attorney General. In this case, a permanent high school teacher was assigned without his consent to teach at an adult school run by the school district at Soledad Correctional Institution. The Attorney General concluded that, although a general-secondary credential authorized teaching at adult school, adult school was an entirely different classification than teaching at regular high school; thus, the teacher could not be assigned to adult school *without* his consent unless tenure was acquired in the adult schools of the district. (41 Ops.Cal.Atty.Gen. 175 (1963); cf. *Finot* v. *Pasadena City Bd. of Education* (1967) 250 Cal.App.2d 189, 202-203 [58 Cal.Rptr. 520] (dealing with a transfer to home teaching from classroom teaching).)

Education Code section 44865 deals with various special, and sometimes more difficult, teaching assignments. There is a perfectly rational basis for requiring a teacher's consent to teach in those special situations.

For the foregoing reasons I would conclude that Education Code section 44865 prohibits school districts from assigning a teacher to teach at a continuation high school or any of the other enumerated assignments without his or her consent. As respondent Baird did not consent to be assigned to teach at Pershing Continuation High School, the trial court's decision granting the writ of mandate was proper and should be upheld.

Respondents' petition for a hearing by the Supreme Court was denied June 29, 1983, Bird, C. J., was of the opinion that the petition should be granted.

---

[1] Ryan Act credentials have been issued since February 1, 1973.
[2] A general-secondary credential was no longer issued after 1976.