TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---------------------------------------------
                                    :
        OPINION            :   No.  87-1206
                                    :
JOHN K. VAN DE KAMP   :   <u>APRIL 12, 1988</u>
    Attorney General     :
                                    :
RONALD M. WEISKOPF   :
Deputy Attorney General   :
                                    :
-----------------------------------------------------------------


THE NATIVE AMERICAN HERITAGE COMMISSION, has requested an opinion on the following question:

Does the Native American Heritage Commission have authority to receive grants or donations of money, services, personal property or real property?

CONCLUSION

The Native American Heritage Commission has authority to receive grants or donations of money, services, personal property and real property, subject to the following: (1) any grant or donation of personal or real property, and any conditional gift of money, must receive prior approval of the Director of Finance; and (2) any donation of services must not displace those that are ordinarily performed by Commission staff within the Civil Service System.

ANALYSIS

In 1976 the Legislature established the Native American Heritage Commission to provide a single governmental entity with powers to identify and catalogue places of cultural significance to Native Americans and to protect the integrity and sanctity of Native American burial sites, skeletal remains, and grave artifacts found on public property. (Stats. 1976, ch. 1332, p. 6028, § 2, adding a new Chapter 1.75 [§ 5097.9, et seq.] to Div. 5 of the Pub. Resources Code.)  In 1982 the Legislature augmented the Commission's powers to enable it to provide protection to Native American burial sites on private lands and resolve disputes regarding them. (Stats. 1982, ch. 1492, p. 5781, § 4, adding inter alia, § 5097.98 to the Pub. Resources Code.)

We learn from the Legislative Counsel's Digest to the bill which enacted the original legislation that its purpose was: (1) to create and empower a governmental entity to be responsible for identifying and cataloging places of cultural significance to Native Americans; (2) to prevent public agencies and private parties using, occupying, or operating on public property from causing severe and irreparable damage to designated types of sacred sites; and (3) to assure appropriate access by Native Americans to such sites. (See, Legis. Counsel's Dig. to AB 4239, 4 Stats. 1976, Summary Dig., p. 377; cf., People v. Superior Court (Douglass) (1979) 24 Cal.3d 428, 434; People v. Ashton (1985) 39 Cal.3d 481, 492; California Teachers' Assn. v. Governing Board (1983) 141 Cal.App.3d 606, 613.)

The purpose for the 1982 amendment is expressed in the legislation itself. (Cf., Friends of Mammoth v. Board of Supervisors (1972) 8 Cal.3d 247, 256; The Housing Authority v. Dockweiler (1939) 14 Cal.2d 437, 449.) There the Legislature found that Native American human burials and skeletal remains had been subject to vandalism and inadvertent destruction at an increasing rate and that state laws did not adequately provide for their protection. (Stats. 1982, ch. 1492, p. 5777, § 1, subd.(a).) Accordingly the Legislature declared that the purpose of the act was to provide such protection for the burials and remains from vandalism and inadvertent destruction, as well as a means by which Native American descendants could make their concerns regarding them known. (Id. § (1), subd. (b).) In addition, the Legislative Counsel's Digest discloses that a purpose for the amendment was to empower the Commission to identify and catalog known graves and cemeteries of Native Americans on private lands and to authorize it to resolve disputes relating to the treatment and disposition of Native American human burials, skeletal remains, and associated grave objects that were found there. (See Legis. Counsel's Dig. to SB 297, 8 Stats. 1982, Summary Dig., p. 551.)

To achieve these purposes, the Commission has been given the following powers and duties: (1) identifying and cataloguing places of special religious or social significance to California Native Americans; (2) assisting Native Americans to make known their concerns regarding the treatment of Indian graves and cemeteries; (3) identifying Native American burial sites on private property and, upon the discovery of remains, notifying the most likely descendants so they might recommend treatment and disposition of them and of the grave goods; (4) mediating disputes regarding the latter between the landowner(s) and the Native American(s) involved; (5) assisting landowners and Native American Groups to develop agreements relating to the disposition of graves and artifacts; (6) making recommendations for the purchase by the state or public agencies of sacred sites on private lands in order to facilitate or assure access thereto by Native Americans; (7) taking action to preserve, protect and ensure access by Native Americans to sacred sites on public property; (8) assisting state agencies in negotiations with the federal government for the protection of sacred places on federal lands; (9) requesting and utilizing the advice and services of federal, state, regional and local agencies; and (10) working with the Department of Parks and Recreation, the California Arts Council and other governmental agencies on Indian matters. (§§ 5097.94, 5097.95, 5097.96, 5097.97, 5097.98.) And, among its specific powers is one--

"[t]o accept grants or donations, real or in kind, to carry out the purposes of [the Native American Historical, Cultural and Sacred Sites law]." (§ 5097.94, subd. (e).)

We are asked whether the Commission has authority to receive grants or donations of money, services, personal property or real property. We conclude that it does.

In analyzing the just-quoted grant of authority contained in subdivision (e) of section 5097.94 we may apply several principles of statutory construction. The primary rule of course is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. (Friends of Mammoth v. Board of Supervisors, supra, 8 Cal.3d at 256; Great Lakes Properties, Inc. v. City of El Segundo (1977) 19 Cal.3d 152, 163; Select Base Materials v. Board of Equal. (1959) 51 Cal.2d 640, 645.) That is done at the outset by examining the words of the statute themselves. (People v. Craft (1986) 41 Cal.3d 554, 560; People v. Belleci (1979) 24 Cal.3d 879, 884; People v. Knowles (1950) 35 Cal.2d 175, 182.) The words in question must then be construed with the nature and purpose of the statute in mind. (West Pico Furniture Co. v. Pacific Finance Loans (1970) 2 Cal.3d 594, 608; Rich v. State Board of Optometry (1965) 235 Cal.App.2d 591, 604.) Particularly as here, where a statute is intended to correct an undesirable situation, that object must be considered and the words of the statute read and liberally construed to give it effect. (People v. Ventura Refining Co. (1928) 204 Cal. 286, 291; County of San Diego v. Milotz (1953) 119 Cal.App.2d Supp. 871, 881.)

The authority granted the Commission is to accept "grants or donations, real or in kind." The word "grant" means to bestow or confer something, for or without consideration, upon some other person or entity, and it can refer both to land or to money. (Black's Law Dict. (5th ed. 1979) at p. 629.) Here it would mean that the Commission could receive grants of money from governmental agencies or private institutions and parties, as well as conveyances of land from them. The term "donation" is synonymous with "gift" and means the act by which the owner of property voluntarily transfers the title and possession of it from himself to another without any consideration. (Black's Law Dict., supra, at p. 437; Ballentine's Law Dict. (3rd. ed. 1969) at p. 371.) "Donation" though, is a word that in ordinary usage applies to services as well as to property. To construe it to include both would further the purposes of the Native American Historical, Cultural and Sacred Sites law.

The phrase "real or in kind" explains the types of "grants or donations" the Commission may accept. (Cf., People v. Corey (1978) 21 Cal.3d 738, 742; Addison v. Dept. of Motor Vehicles (1977) 69 Cal.App.3d 486, 496.) The word "real" is sometimes thought of as relating to land (Black's Law Dict., supra, at p. 1137; cf., Ballentine's Law Dict., supra, at p. 1058), but in common parlance it also means "actual". (Webster's Third New Intn'l. Dict. (1971 ed.) at p. 1890.) The term "in kind" means something of the same species or category as another; something that is not necessarily identical, but is equivalent to it. (Black's Law Dict., supra, at p. 707.) As juxtaposed in subdivision (e), the terms "real" and "in kind" are construed to mean "actual" or "equivalent."

We therefore find that the grant of authority for the Commission to receive "grants or donations, real or in kind" (§ 5097.94, subd. (e)), is sufficiently accommodating to permit the Commission to accept unconditional gifts of, or conditional grants of, land, personal property, money, or services, to further the above-mentioned purposes for which it was established.

We can see how such grants or donations can help the Commission accomplish those purposes. A grant or donation to the Commission of land that encompasses a burial or sacred site can help it preserve its sanctity and integrity; a grant or donation of a right of way to such a site can ensure access by Native Americans to it. A grant or donation of personal property to the Commission, such as lawfully possessed grave artifacts, can help protect their condition and permit the Commission to treat them appropriately. (Cf., §§ 5097.94, subds. (k),(l), 5097.98, 5097.99.) A grant or donation of money can help the Commission augment its limited budget.[1] The volunteered services of private individuals, received as a "donation in kind" instead of money, can help the Commission achieve the same ends. In other words, just as money can be accepted to accomplish the purposes for which the Commission was created, as for example to preserve a particular burial ground, or to clear access thereto, or to examine and catalogue its contents, the services of private parties can be accepted to accomplish those ends directly.

There are however, certain qualifications on the Commission's ability to accept property, money, and services. Inasmuch as the considerations attending that ability differ with respect to each, we will discuss each in turn.

1. Commission Acceptance of Real or Personal Property

As just shown, the specific power granted the Commission "[t]o accept grants or donations, real or in kind, to carry out the purposes of the Native American Historical, Cultural and Sacred Sites law" (§ 5097.94, subd. (e)) is sufficient to authorize it to accept gifts or grants of property.

However, certain sections of the Government Code-- i.e., §§ 11005, 11005.1--set forth specific rules governing the acceptance by a state agency of such grants or donations. Essentially, they permit a state agency to receive them if such is approved by the Director of Finance.

Section 11005 is general and deals with gifts to state agencies of personal and real property. It provides that

"[u]nless the Legislature specifically provides that such approval is not required, every gift to the State of personal property or every gift to the State of real

---

[1]The Native American Heritage Commission is a general fund agency. Its current budget is for $307,000.00 (Governor's Budget (1988-1989 Fiscal Year) at p. GG 28.)

property in fee or in any lesser estate or interest shall be approved by the Director of Finance. . . ."

The section is made applicable "to any state agency which by general or specific statute is expressly or impliedly authorized to enter into [such] transactions. . . ." (§ 11005.)[2]

Section 11005.1 also deals with acceptance of gifts of real or personal property. It provides that

"[t]he Director of Finance may accept on behalf of the State any gift of real or personal property whenever he deems such gift and the terms and conditions thereof to be in the best interest of the State."

The Native American Heritage Commission would be subject to the terms of these Government Code sections: (a) As a "commission" within state government (Pub. Resources Code, § 5097.81), the Native American Heritage Commission is a "state agency" (cf., Gov. Code, § 11000); (b) as we have shown, it is one which by specific statute has been expressly, or at least impliedly, authorized to receive gifts of personal or real property (Pub. Resources Code, § 5097.94, subd. (e)); and (c) there is nothing in its act of creation by which the Legislature has specifically provided that the approval of the Director of Finance is not required before it does so.

Subdivision (e) of section 5097.94 would not provide such authority. In a similar situation presented in 32 Ops.Cal.Atty.Gen. 18 (1958), we rejected the notion that a grant of authority as is found therein for an agency to accept grants or donations, is a special statute which overrides the general approval requirements of section 11005. (Id. at 21.) We said that there was no conflict between the two statutes and "hence no occasion to argue that [one] prevails over the [other]". (Id. at 22.) In fact we said,

---

[2]Section 11005 provides in pertinent part as follows:

"Unless the Legislature specifically provides that such approval is not required, every gift or dedication to the State of personal property or every gift to the State of real property in fee or in any lesser estate or interest shall be approved by the Director of Finance and every contract for the acquisition or hiring of real property in fee or in any lesser estate or interest, entered into by or on behalf of the State, shall be approved by the Director of General Services. Any contract entered into in violation of this section is void. This section applies to any state agency which by general or specific statute is expressly or impliedly authorized to enter into transactions referred to herein. This section does not apply (1) to unconditional gifts of money . . . ." (Gov. Code, § 11005.)

"We have here but another instance where a special, nonconflicting statute for the accomplishment of a particular state function is to be applied with, and not to the exclusion of, a general statute investing the Director . . . of Finance with approval powers [citations]." (Ibid.)

Whereupon we conclude that the Native American Heritage Commission does have authority to receive donations of real or personal property, but that the receipt of such is subject to the approval of the Director of Finance. (Accord, Ibid.; 4 Ops.Cal.Atty.Gen. 111, 112 (1944); 2 Ops.Cal.Atty.Gen. 203, 204 (1943); Cal.Atty.Gen., Indexed Letter, No. IL 75-248 (November 10, 1975) at p. 5.)

2. Commission Acceptance of Money

We have seen how the authority of the Commission to accept "grants or donations, real or in kind" authorizes it to receive grants or donations of money. However, just as section 11005 of the Government Code sets forth certain specific rules governing the acceptance by a state agency of donations of property, section 16302 of that Code sets forth certain rules dealing with the acceptance of donations of money. It provides that whenever any person donates money to the state, (a) the Treasurer is to receive it upon the receipt of a certificate from the Controller (cf., Gov. Code, §§ 12321, 12414; 18 Ops.Cal.Atty.Gen. 135, 137 (1951)); (b) that a donor may specify a particular fund to benefit from the donation; and (c) that the acceptance of such donations are subject to the provisions of section 11005.[3] Since section 11005 requires approval of the Director of Finance for a gift of personal property to be made to the state, but also states that it does not apply to "unconditional gifts of money", the Commission's acceptance of gifts of money would be subject to the approval of the Director of Finance, only insofar as conditional gifts of money are involved.

We do not believe that when a person designates a particular fund to benefit from a donation of money to the state, that it makes the gift of money "conditional" within the meaning of section 11005. That section's requirement for prior approval by the Director of Finance before a state agency can receive credit for conditional gifts of money was designed to ensure that the gift would be proper from the state's point of view. (IL 75-248, supra, at p. 6; cf., § 11005.1, supra.) While a donor's specifying exactly how his or her gift of money is to be used by a state agency might

_____

[3]Section 16302 provides in full as follows:

"Whenever any person donates any money to the State, the Treasurer shall receive it, upon the receipt of a certificate from the Controller. If the donor, at the time of making the donation, files with the Controller a written designation of the fund or appropriation he desires to benefit thereby, his donation shall be credited accordingly. If such a designation is not made, the donation shall be credited to the State School Fund. [¶] The acceptance of any such donation shall be subject to the provisions of Section 11005 of this code."

warrant prior review by the Director of Finance to see if the terms and conditions are in the best interest of the state, a donor's merely designating the fund to be credited with the donation would not. The actual use of the money would be unrestricted, i.e., "unconditional", and other than the designation of the fund, there would be no terms and conditions to review for their propriety.

Whereupon we conclude that subject to the approval of the Director of Finance, the Native American Heritage Commission has authority to have its account in the State Treasury appropriately credited by the Treasurer for donations of conditional gifts of money that have been specifically earmarked for it. (Accord, 32 Ops.Cal.Atty.Gen., supra, at 22; 4 Ops.Cal.Atty.Gen., supra, at 112; 2 Ops.Cal.Atty.Gen., supra, at 204; IL 75-248, supra, at p. 5.) However, since approval of the Director of Finance is not required where unconditional gifts of money are concerned, and since the mere designation of the Commission's fund by a donor as the one to be credited with his or her donation does not make it "an unconditional gift of money", we conclude that the Commission may properly have its account credited with such donations without the Director's prior approval of them. They would be received pursuant to section 16320, simply through the Treasurer's acceptance of the Controller's certificate for receipt of the money, and the Treasurer's crediting the Commission's account in the State Treasury. (IL 75-248, supra, at p. 6.)

3. Commission Acceptance of Services

The question of the Commission accepting "services" is governed by different considerations from the ones governing its accepting grants or donations of money or property. Indeed, the Government Code sections governing donations of the latter do not address the receipt by the state of donated services.

In 1978, though, the Legislature adopted the California State Government Volunteers Act to encourage citizen initiative and volunteer action to assist state government. (Stats. 1978, ch. 1195, § 1, p. 3848; Gov. Code, tit. 1, div 4, ch 8.5, § 3110 et seq.)[4] The Act specifically contemplates that persons, of their own free will, might provide goods or services to state agencies, without any financial gain to themselves. (Gov. Code, § 3111, subd. (a).)

In the situation presented we have seen how the Native American Heritage Commission has been granted express authority "to accept grants or donations, real or in kind, to carry out the purposes of [the Native American Historical, Cultural and Sacred Sites Law]" (§ 5097.94, subd. (e)), and how that authority sufficiently accommodates the power of the Commission

---

[4]The California State Government Volunteers Act contained a "sunset" provision, automatically repealing it on December 31, 1981, unless a later enacted statute, chaptered before January 1, 1982, deleted or extended that date. (Former Gov. Code, § 3112.5.) In 1981, the Legislature deleted the automatic sunset provision (Stats. 1981, ch. 405, § 1, p. 1593) and thus "extend[ed] the provisions of that act permanently." (Legis. Counsel's Dig. to SB 473, 4 Stats. 1981, Summary Dig., p. 108.)

to accept a donation of volunteered services. Indeed, in the California State Government Volunteers Act, the Legislature has generally sought to foster the spirit of volunteerism of private persons in state government. (Stats. 1978, ch. 1195, supra.) Accordingly we have concluded that where private individuals with particular expertise and wherewithal are willing to donate their services to help the Commission accomplish the purposes of the Native American Historical, Cultural and Sacred Sites law, the Commission has statutory authority to accept them.

But, a caveat is in order. When the Legislature adopted the California State Government Volunteers Act it made it clear that it was not its intent

> ". . . that volunteers replace or supplant public employees, where such employees are providing services deemed necessary for the government to perform, but that they add new dimension to providing of governmental services." (Id. § 3112, subd. (g).)

The Commission is established as a state agency and its staff are state Civil Service personnel. (Cal. Const., art VII, § 1(a); Gov. Code, § 18526.)    It's acceptance of volunteered services would be subject to the condition set forth in the California State Government Volunteers Act, that such services do not replace or supplant public employees' providing services deemed necessary for the goverment to perform, but rather that they add new dimension to the provision of governmental services. (Cf., Govt. Code, § 3112, subd. (g); see also, California State Employees' Assn. v. Williams (1970) 7 Cal.App.3d 390, 395-397; Burum v. State Compensation Ins. Fund (1947) 30 Cal.2d 575, 580; Stockburger v. Riley (1937) 21 Cal.App.2d 165, 135; and Kennedy v. Ross (1946) 28 Cal.2d 569, 573.)

We think this means that volunteered services should supplement services that the Commission and its staff are able to provide and are providing, and that they should only be accepted if they would not otherwise be performed. Thus if the Commission does not have a civil servant on its payroll to provide a certain service or undertake a certain activity, or if it otherwise lacks sufficient funds within its budget to do so, it may accept the services of volunteers to perform the task. But to permit the Commission to accept a gift of staff whose tasks should be performed by civil service employees would run counter to the Legislature's intention with respect to the types of services volunteers should be performing. It would also run counter to a major purpose for article VII of the State Constitution which was to prevent displacement of the state Civil Service System. (Cf., IL 75-248, supra, at p. 11, citing California State Employees' Assn. v. Williams, supra, at 400.)

We therefore conclude that the Commission may accept the volunteered services of private individuals to help accomplish its purposes as long as they do not displace those services that ordinarily would be performed by Commission staff.

* * * * *