Filed 6/23/21  P. v. Moody CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C089151 |
| Plaintiff and Respondent, | (Super. Ct. No. STKCRFE20080008390) |
| v. | |
| ANTHONY MOODY, | |
| Defendant and Appellant. | |

Defendant Anthony Moody appeals the trial court's order denying his petition for resentencing pursuant to Penal Code[1] section 1170.95, arguing the trial court erred when it ruled that his voluntary manslaughter conviction is ineligible for relief under the statute.  We affirm.

---

[1]      Undesignated statutory references are to the Penal Code.

BACKGROUND

Defendant and two others robbed various women at gunpoint outside a bar in Stockton. A bystander who tried to intervene was fatally shot. When police arrested defendant, he had the firearm that was used to kill the victim.

Defendant was charged with murder (§ 187, subd. (a)), while engaged in the commission of robbery (§§ 190.2, subd. (a)(17)(A), 211), two counts of robbery (§ 211), and discharging a firearm from a vehicle (former § 12034, subd. (d)).[2] The complaint also alleged that, during the murder, defendant acted for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)), and personally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)).

In 2010, defendant pleaded guilty to voluntary manslaughter (§ 192, subd. (a)) and second degree robbery (§ 211), and admitted a firearm enhancement to the robbery offense. The trial court imposed a sentence of 25 years, consisting of: three years for the robbery offense, a consecutive term of two years for voluntary manslaughter (one-third the middle term), and 20 years for the firearm enhancement to the robbery offense.

"In 2018, the Legislature passed and the Governor signed into law Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437), which restricted the circumstances under which a person can be liable for felony murder and abrogated the natural and probable consequences doctrine as applied to murder. (Stats. 2018, ch. 1015.) [The law added section 1170.95,] . . . a procedure permitting qualified persons with murder convictions to petition to vacate their convictions and obtain resentencing if they were previously convicted of felony murder or murder under the natural and probable

---

[2] Now section 26100, subdivision (d). (See Stats. 2010, ch. 711, §§ 4, 6 (Sen. Bill No. 1080).)

2

consequences doctrine. (*Id.*, § 4.)" (*People v. Flores* (2020) 44 Cal.App.5th 985, 989 (*Flores*).)

In January 2019, defendant filed a section 1170.95 petition seeking resentencing, claiming that he was convicted of murder pursuant to the felony murder rule or the natural and probable consequences doctrine, and requesting the appointment of counsel. In a February 2019 order, the trial court summarily denied defendant's petition, ruling defendant was "[n]ot eligible for relief because [he] was not convicted of felony murder or murder under a natural probable consequences theory. [Defendant] was convicted of [m]anslaughter."

Defendant timely appealed.

## DISCUSSION

### I

Defendant argues the trial court erred in concluding he is ineligible for section 1170.95 relief because his conviction was for manslaughter. He contends the "entire statutory scheme and the rules of statutory construction" support the proposition that section 1170.95 "applies to someone convicted by plea to manslaughter to avoid a conviction for murder." The People argue section 1170.95, "by its plain language," "applies only to convictions for . . . murder." We agree with the People.

" 'If the language [of a statute] is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.' [Citation.] But, '[i]f the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citations.]" (*Flores, supra*, 44 Cal.App.5th at p. 992.)

"[S]ection 1170.95 authorizes only a person who was 'convicted of felony *murder* or *murder* under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's *murder* conviction vacated.

3

. . .' (*Id*., subd. (a), italics added.) If the petitioner makes a prima facie showing that he or she is entitled to relief, the sentencing court must 'hold a hearing to determine whether to vacate the *murder* conviction and to recall the sentence and resentence the petitioner on any remaining counts . . . .' (*Id*., subd. (d)(1), italics added.) In lieu of a resentencing hearing, the parties may stipulate that 'the petitioner is eligible to have his or her *murder* conviction vacated' and to be resentenced. (*Id*., subd. (d)(2), italics added.)" (*Flores, supra*, 44 Cal.App.5th at p. 993.)

"Through its repeated and exclusive references to murder, *the plain language* of section 1170.95 limits relief only to qualifying persons who were convicted of murder." (*Flores, supra,* 44 Cal.App.5th at p. 993, italics added; see also *People v. Cervantes* (2020) 44 Cal.App.5th 884, 887 (*Cervantes*) ["The plain language of [§ 1170.95] is explicit; its scope is limited to murder convictions"].)

"Section 1170.95 does not mention, and thus does not provide relief to, persons convicted of manslaughter, which, 'while a lesser included offense of murder, is clearly a separate offense . . . .' [Citation.] Had the Legislature intended to make section 1170.95 available to defendants convicted of manslaughter, it easily could have done so. [Citation.]" (*Flores, supra*, 44 Cal.App.5th at p. 993; see also *Cervantes, supra*, 44 Cal.App.5th at p. 887 ["there is no reference [in § 1170.95] to the crime of voluntary manslaughter"].)

Because the plain language of section 1170.5 is clear, and does not lead to an absurd result, we will follow its plain meaning—as did the Fourth District, Division One (*Flores*), and the Second District, Division Six (*Cervantes*)—and conclude that convictions for voluntary manslaughter are ineligible for section 1170.95 relief. Accordingly, the trial court did not err in summarily denying defendant's petition.

4

Our conclusion that the language of section 1170.95 permits only one reasonable interpretation eliminates any need for us to consider the statute's preamble, or "extrinsic aids," such as the legislative history, as defendant invites us to do.[3]

Defendant argues that section 1170.95, subdivision (a)(2), which states one of the three threshold (conjunctive) conditions that a successful petitioner must satisfy, creates "ambiguity" such that defendant's plea to voluntary manslaughter arguably is contemplated in the statute. The provision reads: "The petitioner was convicted of first degree or second degree murder following a trial *or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder*." (Italics added.)

Defendant's argument is unpersuasive, because it "places an outsized importance on a single clause to the exclusion of the provision's other language. . . . [T]he remaining

---

[3]    In his opening brief, defendant quotes the Legislative Counsel's Digest in support of his argument but misidentifies the source of the text as being the *preamble* to Senate Bill No. 1437. But, because the Legislative Counsel's Digest is "not a part of the law" (*California Teachers' Assn. v. Governing Board* (1983) 141 Cal.App.3d 606, 614), defendant's effort to invoke it to demonstrate that Senate Bill No. 1437's statutory scheme is "ambiguous" is inapposite.

Further, the relevant portion of the Legislative Counsel's Digest that defendant invokes is imprecise in characterizing Senate Bill No. 1437. (See *People v. Indiana Lumbermens Mutual Ins. Co.* (2010) 49 Cal.4th 301, 310, fn. 7 [noting a "misreading" of legislation "appeared in the Legislative Counsel's Digest," and explaining that, while "[o]ften, the Legislative Counsel's Digest is helpful in construing a statute," "when the plain words of the statute are unambiguous, they are the sole source of legislative intent, not the Digest"].)

The Legislative Counsel's Digest says "[t]his bill would provide a means of *vacating the conviction* and resentencing a defendant when . . . the defendant . . . accepted a plea offer in lieu of a trial. . . ." (See Legis. Counsel's Dig. to Sen. Bill No. 1437 (2017-2018 Reg. Sess.), italics added.) A better characterization of the bill would have included the word "murder" before the word "conviction" to read: "this bill would provide a means of vacating the *murder* conviction . . . ."

portions of section 1170.95 repeatedly and exclusively refer to murder, not manslaughter." (*Flores, supra*, 44 Cal.App.5th at p. 995.)

Our conclusion that voluntary manslaughter convictions are not eligible for relief pursuant to section 1170.95 is not "absurd" or irrational, as defendant contends. "The legislative goal was to eliminate the sentencing disparity caused by the felony murder rule. That goal was properly achieved by the section 1170.95 petition procedure to vacate those murder convictions." (*Cervantes, supra*, 44 Cal.App.5th at p. 889; see also *Flores, supra*, 44 Cal.App.5th at pp. 996-997 [rejecting the contention that an interpretation "limit[ing] [§ 1170.95's] ameliorative benefits only to defendants convicted of murder" would be absurd, because of judicial economy concerns, and because the Legislature could have reasonably concluded reform in murder cases was more crucial].)

## II

Defendant also argues that equal protection principles articulated in the federal and state Constitutions "require [defendant] receive the benefit of" Senate Bill No. 1437. The People argue that because defendant is not similarly situated to defendants convicted of murder, his equal protection claim lacks merit. We agree with the People.

" 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' [Citation.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)

Because defendant was convicted of voluntary manslaughter, a different crime from murder that carries a different punishment, he is not similarly situated to those convicted of murder. (See *Cervantes, supra*, 44 Cal.App.5th at p. 888 [rejecting an equal protection challenge to § 1170.95 by an offender convicted of voluntary manslaughter].) Thus, defendant's equal protection challenge falls at the first step.

6

## DISPOSITION

The judgment (order) is affirmed.

/s/
_____
BLEASE, J.

We concur:


/s/
_____
RAYE, P. J.


/s/
_____
RENNER, J.